The **AMERICAN CIVIL LIBERTIES UNION OF GEORGIA; Gene Guerrero, individually, and as Executive Director of the American Civil Liberties Union of Georgia; Eduard N. Loring, Robert W. Karnan, Juda H. Mintz, and Joseph C. Cavallo, individually, Plaintiffs,**

v.

The **RABUN COUNTY CHAMBER OF COMMERCE, INC.: The Honorable Joe D. Tanner, Commissioner, Department of Natural Resources, State of Georgia; and the Honorable George D. Busbee, Governor, State of Georgia, Defendants.**

Civ. A. No. C79–2035A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 26, 1981.

John Pickens, Atlanta, Ga., for plaintiffs.

Isaac Byrd, Atlanta, Ga., Frank Sutton, Clayton, Ga., G. Paris Sykes, Jr., Atlanta, Ga., Dennis Cathey, Cornelia, Ga., and James V. Pleasants, St. Simons Island, Ga., for defendants.

## MEMORANDUM OPINION

### HORACE T. WARD, District Judge.

■ This dispute was engendered by the presence of a large, lighted Latin cross in Black Rock Mountain State Park, a Georgia state recreational facility located in Rabun County. Plaintiffs are the American Civil Liberties Union and its director, two Protestant ministers, a Catholic priest, and a rabbi. Defendants are the Rabun County Chamber of Commerce, which caused the cross to be erected, and two state officials. At issue is whether the Establishment Clause of the First Amendment[1] requires that the cross be dismantled, since it stands on state property. Plaintiffs' motion for a preliminary injunction has been consolidated with the trial on the merits held in January, 1981, and the court's findings of fact and conclusions of law are set forth below.

### Findings of Fact

Intermittently since 1957 a lighted cross has stood in Black Rock Mountain State Park. The initial structure, a large metal frame in the shape of a Christmas tree[2] on which a lighted crossbar was placed, was removed in the early 1970's. In March, 1979, defendant Rabun County Chamber of Commerce decided that a new cross would be erected in the state park if the approval of Georgia's Department of Natural Resources could be obtained. While the question of whether the state actually gave its approval is disputed, the parties agree that a new cross was placed on Black Rock Mountain in early 1979 by the Rabun County Chamber of Commerce.

The cross in question is a rather formidable structure which bears 31 mercury vapor lights of 175 watts each and sits atop an 85-foot telephone pole. The lighted portion is 26 feet by 35 feet and is illuminated approximately from sunset until 10:15 or 10:30 p. m. each night. It is in the shape of a Latin cross, the traditional insignia of the Christian religion, and readily recognizable as that symbol. Even in the summer, when because of foliage it is least visible, the cross can be seen at night from at least four miles away. The Chamber of Commerce pays the costs of its electricity bills and upkeep.

---

1. The First Amendment addresses religion in the following language: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." It is applicable to state governments by virtue of the Fourteenth Amendment. *E. g., Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

2. The structure was an electrically-lighted Christmas tree symbol when first erected in 1956 and modified into a cross the following year. Shortly thereafter it was deeded to the state of Georgia by its owners.

Defendant Rabun County Chamber of Commerce claims that the cross was not erected for a religious purpose but for the secular one of promoting tourism. There was considerable and convincing evidence, however, that the cross was placed on the mountain for religious reasons. At the time the erection of the present cross was initially proposed, the chairman of the fund raising committee organized by the Chamber of Commerce stated that "broad financial support" for the project from Rabun County churches would be "fitting and appropriate." Plaintiffs' Exhibit 12 (press release by Rabun County Chamber of Commerce of March 19, 1979, also published in Clayton Tribune, March 22, 1979).[3] He also stated that it would be "great" if the cross could be ready in time to be dedicated on Easter, "the most meaningful day for a cross." *Id.* The cross was in fact dedicated in a religious service held on Easter Sunday, 1979, although not yet in place.

The state's position in this controversy is rather undefined. A state employee, superintendent of the park, initially gave his approval to placement of the cross in the tent camping area. The Chamber's written request to the Department of Natural Resources for permission to erect the cross was then approved in March, 1979, as evidenced by a letter from Director Henry Struble. He stated that this approval was given pending preparation of a revocable license to put up the cross.[4] A license was mailed later, attached to a letter dated April 4, 1979, but never executed. At one point employees of the Department of Natural Resources actually contacted the Chamber's attorney and suggested that it be designated a memorial to the dead; this suggestion was never implemented by the

Chamber of Commerce. When it was made known to the Department of Natural Resources that plaintiff American Civil Liberties Union objected to the cross's presence on state property, however, defendant Commissioner Tanner advised the Chamber that the cross would have to be removed. Plaintiffs' Exhibit 26 (letter of June 8, 1979). The Chamber refused to comply with this request on the grounds that considerable funds had already been expended and that the structure was now its private property. Several months later plaintiffs filed this action for injunctive relief.[5] Although it no longer sanctions the presence of the cross in Black Rock Mountain State Park, the state of Georgia opposes any grant of injunctive relief on the ground that the Establishment Clause has not been contravened. The non-Christian plaintiffs, ACLU Director Gene Guerrero and Rabbi Juda Mintz, testified that the cross's location on public land had an inhibitory effect on them. All plaintiffs except Joseph Cavallo, who did not testify, and plaintiff Loring were familiar with the cross through personal observation; Loring had seen photographs of it. All were opposed to the presence of the cross in Black Rock Mountain State Park on Establishment Clause grounds.

### Standing

Defendants urge that plaintiffs lack standing to bring this suit because they fail to allege "a real and immediate injury." It is apparently their contention that the so-called "injury in fact" requirement for standing has not been established. *See, e. g., Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (to have standing, a party must allege "that

---

**3.** The defendant Chamber's Board of Directors determined from the outset, at its March 1, 1979 meeting, that members of the fund raising committee would be drawn from "churches, service organizations and governmental bodies." Plaintiffs' Exhibit 7 (minutes of March meeting, Board of Directors of Clayton County Chamber of Commerce).

**4.** Director Struble's letter also stated: "We wanted to formally notify you of our intentions to approve your request in order that you

might seek to meet your Easter deadline." Plaintiffs' Exhibit 11.

**5.** A great deal of evidence other than that summarized above was presented at trial but is of no relevance. This includes evidence as to the environmental impact of the cross, secular structures (such as street signs and telephone poles) which are similar in design, and Rabun County's tourist attractions.

the challenged action has caused him injury in fact, economic or otherwise"). The Supreme Court has limited citizen standing to bring suits challenging government action when plaintiffs have no interest in the suits other than that shared by all Americans. In the context of an Establishment Clause case, however, standing is more broadly permitted. *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 179–80, 94 S.Ct. 2940, 2947–48, 41 L.Ed.2d 678 (1974). When an Establishment Clause claim is raised, "the requirements for standing . . . do not include proof that particular religious freedoms are infringed." *Abingdon School Dist. v. Schempp*, 374 U.S. 203, 224 n.9, 83 S.Ct. 1560, 1572 n.9, 10 L.Ed.2d 844 (1963). Rather, "a spiritual stake in First Amendment values [will be] sufficient to give standing to raise issues concerning the Establishment Clause." *Association of Data Processing Service Organizations v. Camp, supra*, 397 U.S. at 154, 90 S.Ct. at 830. With the exception of Joseph Cavallo, the individual plaintiffs in the instant case gave testimony on their concerns with the separation of church and state, and this is sufficient to demonstrate standing to sue. They have alleged injury in fact to an interest protected by the Establishment Clause which each has a personal right to enforce.[6] "[U]nless individuals averring an encroachment of their legal rights have some recourse other than [to] the political process for the vindication and protection of those rights, the proud claim that individual citizens have rights against the government may be emptied of significance." *Americans United for Separation of Church and State v. HEW*, 619 F.2d 252, 265 (3d Cir. 1980).

■ As to the one plaintiff not a natural person, the ACLU, its standing is conferred by the testimony of its director, plaintiff Guerrero. *Compare Americans United, supra* (nonprofit, tax-exempt organization had

standing to sue under Establishment Clause when four of its individual directors joined in suit), *with Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1294 (10th Cir. 1980) (appeal of unincorporated citizens' association dismissed when no constitutionally protected interest of any member was identified and where record failed even to identify any individual persons as members of association). Defendants' argument that plaintiffs lack standing to bring this suit is accordingly rejected.

### Conclusions of Law

■ The standards for evaluating the validity of a state statute under the Establishment Clause are clearly set out in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (*Lemon I*) (holding unconstitutional state aid to parochial schools). To pass muster under the Establishment Clause a state law must have a secular legislative purpose; its principal and primary effect must be one that does not advance or inhibit religion; and it must not foster an excessive government entanglement with religion. *See also Stone v. Graham*, —— U.S. ——, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (state could not constitutionally require Ten Commandments to be posted on classroom walls).

■ The case at bar does not present a statute for review, but this does not bar application of the three-part constitutional test. It is the effect of a state's acts which brings constitutional scrutiny to bear, not the manner of their implementation. State acts may be legislative, administrative, or judicial; so long as they use state resources in a manner offensive to the Constitution, federal courts may act.

■ Presuming that the degree of state involvement in the erection or maintenance of this cross is such that the Establishment Clause has been properly invoked,

---

6. Plaintiff Joseph Cavallo did not appear at trial. Paragraph 6 of the complaint avers that he is a resident of this district, a Georgia taxpayer, and a Roman Catholic priest. The court finds his status as a clergyman sufficient to confer standing to sue under the Establishment Clause.

a point to be addressed *infra*, the test of *Lemon v. Kurtzman* may be applied. The first question it raises is whether the cross was erected for a religious purpose. Despite the protestations of the Chamber of Commerce that its goal was strictly to promote tourism in Rabun County, the circumstances surrounding the implantation of this huge Christian symbol atop a mountain are compellingly religious.[7] See Findings of Fact, *supra*, pp. 2–3. The court concludes without question that the cross on Black Rock Mountain was erected out of religious stirrings and for a religious purpose, and that the first question posed by the *Lemon v. Kurtzman* test must be answered in plaintiffs' favor.

■ Proceeding to the second portion of the test, the court must determine whether the principal and primary effect of the cross atop Black Rock Mountain is to advance a religion. This lawsuit presents facts different from those in cases involving state aid to parochial schools in that, with the exception of the Chamber's promotion of tourism claim, there is no admixture of other motives to the erection and maintenance of the cross. As the predominant motive of its builders was to advance the Christian religion, so is this advancement its predominant effect. An obviously Christian emblem shining across the north Georgia mountains and even visible far into North Carolina, this cross can have no other primary effect but to further the cause of the religion it symbolizes. It thus fails to pass constitutional muster under the second part of the test imposed by the Supreme Court.

■ Finally, the court must determine if the erection and maintenance of the Rabun County cross on state land has caused Georgia to be excessively entangled with religion. This portion of the test actually raises two questions. First, it must appear that the state is involved in the questioned action to an extent sufficient to justify the application of First Amendment analysis.[8] In the instant case, that the state eventually withdrew its grant of permission to build a cross in its park does not change the fact that the structure stands today on state land, and would not be there without the initial approval, even encouragement, of the Department of Natural Resources. State personnel suggested a location for the cross in the park and, when constitutional doubts arose, suggested styling it a memorial to the departed. Despite Commissioner Tanner's letters to the Chamber the state has taken no action to have the cross removed from its property and essentially adopts the constitutional arguments of the Chamber of Commerce in this dispute. There is clearly sufficient state action (and, following the Commissioner's determination that the cross should be removed, sufficient state inaction) to render the *Lemon v. Kurtzman* analysis applicable to the case at bar.

■ The remaining question is then whether the existence of a large lighted Latin cross in a Georgia park fosters excessive entanglement between the state and

---

**7.** As plaintiffs point out, an appeal to a single religious group in an effort to promote tourism is in any case constitutionally questionable. *See Citizens Concerned for Separation of Church and State v. City and County of Denver*, 481 F.Supp. 522, 528 (D.Colo.1979). *But see Citizens Concerned for Separation of Church and State v. City and County of Denver*, 508 F.Supp. 823 (D.Colo.1981) (slip op.) ("Fastidiousness or overzealous rigidity has never been the test for separation of church and state, nor should it be. While government must be sensitive to the religious beliefs or disbeliefs of its citizens, it is not required to abandon common sense.")

**8.** The Establishment Clause only speaks to acts of Congress. As applied to the states under the

Due Process Clause of the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), it still is limited only to governmental action "respecting an establishment of religion ...." U.S.Const., amend. I. The Clause does not forbid the Rabun County Chamber of Commerce from building a cross on a neighboring mountain which is privately owned. Private citizens' actions to establish a religion do not come within the purview of the Fourteenth Amendment, *cf. Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), and are in any event protected by the Free Exercise Clause.

religion. Plaintiffs assert that the presence of a Christian symbol of this magnitude on state property is, alone, sufficient to find entanglement. The concept of "excessive entanglement" is one closely tied to that of "principal and primary effect," *see Roemer v. Board of Public Works*, 426 U.S. 736, 769, 96 S.Ct. 2337, 2355, 49 L.Ed.2d 179 (1976) (White, J., concurring), and difficult to differentiate under the instant facts. Excessive entanglement is perhaps most simply defined as an impermissible merging or intermeddling of the proper spheres of religion and government. *See J. Madison, The Memorial and Remonstrance Against Religious Assessments* ¶ 11, *reproduced in Walz v. Tax Commission of City of New York*, 397 U.S. 664, 719–27, 90 S.Ct. 1409, 1437–41, 25 L.Ed.2d 697 (1970) (appendix to opinion of Douglas, J., dissenting), *and quoted in Lemon v. Kurtzman, supra*, 403 U.S. at 633–34, 91 S.Ct. at 2121 (Douglas, J. concurring). *Cf. L. Tribe, American Constitutional Law* 865 (1978).

In the case at bar the state has not intruded into the internal affairs of any church, and indeed no organized religious body is involved. Nor has any religious group assumed control of one of the state's functions so as to excessively intermesh church and state. Yet an aspect of the prohibition on entanglement recognized by the Court in *Lemon v. Kurtzman* is a potential for political division along religious lines. 403 U.S. at 622–24, 91 S.Ct. at 2115. When the state is permitted avenues to either reward or act to the detriment of religious groups, creeds will jockey for power over the decisionmaking organs of government. Moreover, apparent state sanction for one religion over all others can cause tension and a concomitant risk of political divergence on theological grounds. English history had taught the early Americans to forestall such potentially violent developments by preventing, first in the Virginia Bill for Religious Liberty and then in the First Amendment, the political predominance of a single faith over any other. *See Engel v. Vitale*, 370 U.S. 421, 429, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962); *Everson v. Board of Education*, 330 U.S. 1,

11–13, 33–42, 67 S.Ct. 504, 509–10, 520–24, 91 L.Ed. 711 (1947). This court can do no less than enforce their principles, and must conclude that the presence of the Rabun County cross on state parkland impermissibly enmeshes state and church by creating the appearance of official backing for Christianity.

In light of the foregoing, the court concludes as a matter of law that the presence of this lighted cross in Black Rock Mountain State Park offends against the Establishment Clause of the First Amendment, and that defendants must remove it. An order will be entered in accordance with this opinion.