Herald James JOHNSON and Al Friedman, Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF BERNALILLO COUNTY, David Santillanes, Chairman, Juven Sanchez, Robert Hawk, Wray Simmons, E. R. (Corky) Morris, Members, Defendants.

Civ. No. 80–852–JB.

United States District Court, D. New Mexico.

Dec. 21, 1981.

**920**

Paul A. Phillips, Albuquerque, N. Mex., for plaintiff.

Hunter L. Geer, Albuquerque, N. Mex., Linda M. Davison, Denver, Colo., for defendant.

## MEMORANDUM DECISION AND ORDER

BURCIAGA, District Judge.

This is a civil action in which Plaintiffs seek a declaratory judgment and an injunction to prevent Defendant Board of County Commissioners of Bernalillo County from displaying and appropriating public funds for the display of the Bernalillo County official seal. It is their contention that the official seal constitutes an instrument propagating religion and a particular religion, to wit: Christianity; that the use of the seal constitutes an establishment of religion and an interference with the free exercise of religion, in violation of the First Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment. This practice is also claimed to be violative of Article II, Section 11, of the New Mexico Constitution.

The action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 2201 and § 2202. The jurisdiction of the state-law issue is also properly before the Court. *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Although Defendant initially contested the standing of Plaintiffs to bring this action, it has apparently conceded standing in its requested findings of fact and conclusions of law. Nonetheless, it is appropriate to state that Plaintiffs have standing as they have asserted a litigable interest under the Establishment Clause and the Freedom of Exercise Clause of the First Amendment. *Anderson v. Salt Lake City Corp.*, 475 F.2d 29 (10th Cir. 1973).

It is important—indeed essential—that our citizens stand ever vigilant to insure complete governmental neutrality in religious matters. In undertaking this high mission, however, one must attempt to avoid being a slave to his own perceptions since, too often, personal interest becomes the standard of one's belief as well as of one's practice.

The Bernalillo County seal which is the subject of this action is a circle around the edge of which appear the words: "County Commissioners—Bernalillo County, New Mexico." Within an inner circle, the words "CON ESTA VENCEMOS" stand against a

background depicting the sky. Below these words is a cross centered over four blue mountains. Beneath the mountains is a green plain against which eight sheep are imposed. The origin of the seal is unclear but it is uncontradicted that it has been in official use by the County since at least 1925. The seal appears on all official County documents and County stationery and is displayed on County property such as County motor vehicles and on shoulder patches of the members of the Bernalillo County Sheriff's Department. As part of their relief, Plaintiffs seek the removal of the cross and the motto "CON ESTA VENCEMOS" from the seal.

The First Amendment clearly states that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. This portion of the First Amendment typically is referred to as the Establishment and Freedom of Exercise Clauses. The Court will discuss these clauses separately. Before doing so, however, there are certain legal precepts that are firmly established in First Amendment jurisprudence which dictate the Court's decision.

In the panorama of First Amendment decisions, one caveat remains outstanding: that the history of man is inseparable from history of religion. *Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). And, while acknowledging this tenet, the Court is not blinded to the fact that the pages of history of the Southwest record dark deeds committed under the aegis of religion.

Although the Establishment Clause and the Free Exercise Clause may in certain instances overlap, they forbid two quite different kinds of governmental encroachment upon religious freedom. The Establishment Clause prohibits the fusion of government and religious functions or a concert or a dependency of one upon the other. *School District of Abington Township, Pennsylvania v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). The Free Exercise Clause recognizes the right of every person to freely choose his own course in the pursuit of belief in a religion totally free of compulsion from the government. It also recognizes the right of non-belief. *Abington v. Schempp, supra.*

Before discussing these clauses, it is appropriate, to give heed to Mr. Justice Goldberg's announcements in *Abington v. Schempp, supra*, at page 306, 83 S.Ct. at page 1615 where he stated:

> Neither government nor this court can or should ignore the significance of the fact that a vast portion of our people believe in and worship God and that many of our own legal, political and personal values derive historically from religious teachings. Government must inevitably take cognizance of the existence of religion and, indeed, under certain circumstances the First Amendment may require it to do so.

Equally illuminating is the opinion of Mr. Justice Jackson in *McCollum v. Board of Education*, 333 U.S. 203, 235–236, 68 S.Ct. 461, 477, 92 L.Ed. 649 (1948), wherein he stated:

> I should suppose it is a proper, if not an indispensable, part of preparation for a worldly life to know the roles that religion and religions have played in the tragic story of mankind. The fact is that, for good or for ill, nearly everything in our culture worth transmitting, everything which gives meaning to life, is saturated with religious influences, derived from paganism, Judaism, Christianity—both Catholic and Protestant—and other faiths accepted by a large part of the world's peoples.

Of the two Plaintiffs only Plaintiff Friedman appeared at the hearing. He identified himself as a social worker, a resident of Bernalillo County, and described himself as an "atheist" and an "ethnic Jew." According to Mr. Friedman, the cross on the seal was anathematical to him and had an inhibitory effect upon him. He also perceived the sheep in the seal as part of the Christian symbolism of the seal.

Rabbi Citrin, the rabbi of Temple Albert, a congregation of approximately 400 people,

spoke for Plaintiffs as did Mr. Gerald Goodman. Although he could not speak for his congregation, Rabbi Citrin said he personally viewed the cross as a "theological statement." He admitted, however, that the cross did not inhibit him in the practice or the propagation of his faith. Mr. Goodman, a Bernalillo County Commissioner from 1964 to 1966, found the statement "con esta vencemos" to be a militant statement but, as far as he was concerned, presented "no problem."

County Manager Alex Abeyta, Jr., testifying for the Defendant, stated that State law required a seal and that the seal was used on the County motor vehicles for identification purposes. This use also was echoed by another defense witness, County Commissioner Wray Simmons who described the cross as a Latin cross having only historical significance. Commissioner Morris, a Bernalillo County Commissioner since 1972, also stated that the seal was used to give identification to the County. Past Commissioner, Mr. L. A. "Skeet" McCulloch, Jr., saw the seal as a "historical, geographical and topographical display." [1]

Mr. Byron A. Johnson, the curator of history of the Albuquerque Museum, Albuquerque, New Mexico appeared as an expert for Defendant. He recited the historical precedence for all of the symbols displayed in the County seal. He translated the motto on the seal, "con esta vencemos," as "with this we conquer." It should be noted here that the expert witness for Plaintiffs, Dr. Raymond MacCurdy, a professor at the University of New Mexico, similarly translated the words but added that they also could be translated as "with this we overcome" or, simply, "with this we win."

Mr. Johnson found the seal representative of the history and culture of Bernalillo County. He stated that the green background with the sheep imposed had a historical reference to sheep raising in the Bernalillo County in the mid-1800's when Bernalillo County had the oldest and most intensive sheep raising industry in the United States.[2] Mr. Johnson asserted that the first incursion into the New Mexico territory by Europeans was made in 1539 by a Catholic Friar, Marcos de Niza, who explored New Mexico including the Bernalillo County area. The entry of Francisco Vasquez Coronado followed. Coronado's party included two priests, Friars Escalante and Padilla who remained in Bernalillo County and were later killed by hostile pueblo Indians. In 1581, Fray Augustine Rodriguez and two assistant clerics, Friars Lopez and Santa Maria, entered in search of Escalante and Padilla and met the same fate. Finally, with the Onate expedition of 1598, farming became the principle activity in the Bernalillo County area and missions were built at Sandia Pueblo in 1610 and at Isleta Pueblo in 1612. Once permanent settlements were established, the Catholic missionaries played a singular role in keeping the Spanish colonists physically and spiritually alive.

Mr. Johnson further testified that Catholicism was then the State church; that the church could not be separated from New Mexico history; that, indeed, the church was totally integrated in the heritage of New Mexico and of Bernalillo County. He saw the cross in the seal as symbolic of the long history of Catholic exploration, the church's missionary endeavors, and of the

---

1. When asked what the sheep on the pastoral background represented, Commissioner McCulloch humorously stated that he did not know but that according to some of the County Commissioners during his tenure, the sheep represented the voters to be fleeced.

2. The importance of the sheep industry in Bernalillo County is supported by the Department of Agriculture's *Special Report on the History and Present Conditions of the Sheep Industry* of the United States published by the Govern-

ment Printing Office in 1892. It reports that sheep were brought into the territory by the Spanish in 1680. In 1890, the count of sheep in Bernalillo County numbered 800,000 and the wool product handled in that time amounted to approximately two million pounds. The Report also points out that there was a total of 38,640,-446 acres of irrigable agricultural and grazing lands. Of these lands, the majority were situated in the Rio Abajo which encompassed all of the present Bernalillo County. *Id.* at 914–930.

church's impact on early Hispanic life in the region.

Dr. Charles Polzer, a Jesuit priest and ethno-historian from the University of Arizona, agreed that sheep raising was the primary industry in colonial Bernalillo County. In his view, the sheep in the seal could not be a religious symbol since such a symbol typically requires a "life-form" which does not appear in the seal. He stated that Christianity played a significant part in southwestern history. He also viewed the cross in the seal not as a religious symbol but as an historic symbol of the Christian and Spanish heritage of New Mexico.

Mr. Henry Beckwith, an expert in heraldry, also spoke for Defendant. He described the cross in the seal as a "botonee" cross, a term of heraldry, referring to the three buttons at the end of each arm of the cross. Mr. Beckwith described the cross as "victorian decadent," and identified the seal as an heraldic composition. He found the seal to be symbolic of the Spanish heritage of New Mexico and the sheep raising industry of the region.

The origin of the cross, as we presently know it, is hidden in the mists of time. Gibbon reports that the principal standard which displayed the cross was the *Labarum*.[3] He describes it as a long pike intersected by a transversal beam. He also notes that the ecclesiastic writers have found the figure or likeness of a cross in almost every object of nature or art; in the intersection of the meridian and equator, the human face, a bird flying, a man swimming, a mast and yard and a plow.[4]

The cross initially was an instrument of torture with which the ideas of guilt, pain and ignominy were closely united.[5] This form of punishment was abolished by Constantine and it is reported that the emperor erected his own statue in the midst of Rome, following his conquests, bearing a cross in his right hand with an inscription which referred to the victory of his arms in the deliverance of Rome.[6] Some ecclesiastic writers report that in the night which preceded the last battle against Maxentius, Constantine was admonished in a dream to inscribe the shields of his soldiers with the "celestial sign of God"; that he executed the command and was rewarded by the decisive victory of the Milvian Bridge.[7] As to this, Gibbon questions the credulity of the reporter and concedes the tacit approbation of Constantine himself. It is also reported that on one of the marches of Constantine, he personally observed the sign of the cross above the meridian sun and inscribed with the words "by this conquer."[8] Christ then appeared before his eyes displaying the same celestial sign of the cross and directed Constantine to frame a similar standard for an assured victory over Maxentius.[9]

If these writers are to be believed, it would seem that as early as 312 A.D., a cross and motto, similar to the cross and motto in the Bernalillo County seal, were perceived, or conceived, for dubious pious purposes.

### Establishment Clause

In cases dealing with the Establishment Clause, the Supreme Court has announced a three-part test for determining whether government activity is permissible:

> First, the [action] must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the [action] must not foster "an excessive government entanglement with religion."

*Stone v. Graham*, 449 U.S. 39, 40, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980); *Lemon v.*

---

3. 1 E. Gibbon, *The Decline and Fall of the Roman Empire* 645 (1931).

4. *Id.* at 644 n. 29.

5. *Id.*

6. *Id.* at 644 n. 31.

7. *Id.* 646.

8. *Id.* 649.

9. *Id.*

Kurtzman, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971); *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); *Lanner v. Wimmer*, 662 F.2d 1349, 1353 (10th Cir., 1981). In applying the test, it must be recognized that total separation is not possible in the absolute sense since some relationship between government and religion is recognized. *Lemon v. Kurtzman, supra.* Indeed, religious values pervade the very fabric of our national life. *Lemon v. Kurtzman, supra*, 403 U.S. at 623, 91 S.Ct. at 2116.

### Purpose

■ Examining the Bernalillo County seal under the first element of the test, the Court finds that a secular legislative purpose is served. And in so finding, the Court acknowledges that the cross has a religious significance. The Court would be disingenuous to do otherwise. The Court would be correspondingly disingenuous to deny that Catholicism was the preeminent religion in the early days of this territory. Catholicism cannot be separated from New Mexico history. Catholicism is as much of New Mexico history as the conquistadores who explored this area and named the State capital "Santa Fe," which translated means "the City of the Holy Faith," and named our beautiful mountain range "Sangre de Cristo," which translated means "the blood of Christ."

The Court finds persuasive the testimony of Mr. Johnson and Dr. Polzer that the cross in the seal represents the Spanish and Catholic traditions of early New Mexico and of Bernalillo County. And, based upon the history of the sheep raising industry about which comment has already been made, the Court finds that the sheep depicted on the seal are symbolic of that industry.

The Court finds that the purpose of the Bernalillo County seal, in its present form, is to authenticate official documents, authenticate official communications, and to facilitate identification of County property and personnel of the County Sheriff's office. Simultaneously, it is used to promote the appreciation of the heritage, history and cultural pride of Bernalillo County.

### Effect

In addressing the issue of whether the cross and motto on the Bernalillo County seal have a principal or primary effect that advances or inhibits religion, the Court again must view the seal against the historical panorama.

■ The Court acknowledges that the government may depict objects with a spiritual content, but it may not promote or give its stamp of approval to such spiritual content. *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980); *Allen v. Hickle*, 424 F.2d 944 (D.C.Cir.1970). The First Amendment does not require that the prerogatives of government be limited by the sensibilities of its most sensitive or fastidious citizens. *Citizens Concerned for Separation of Church and State v. The City and County of Denver*, 526 F.Supp. 1310 (D.Colo.1981). And individual sensitivities or preferences are not the constitutional standard. *Zorach v. Clauson*, 343 U.S. 306, 314, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952).

■ Although the cross and the motto may have some religious significance to Mr. Friedman, or some other sensitive perceiver, the Court views the cross and the motto on the seal as having only a benign reference to religion and having no principal or primary effect that advances or inhibits religion. The Court views the seal as an iconographic illustration of the rich cultural heritage of Bernalillo County.

### Entanglement

■ Excessive government entanglement is perhaps most simply defined as an impermissible merging or intermeddling of the proper spheres of religion and government. *American Civil Liberties v. Rabun City Chamber of Commerce*, 510 F.Supp. 886 (N.D.Ga.1981). In the typical parochial aid case, the Supreme Court examines four factors to determine whether government entanglement with religion is excessive. These elements are: (1) the character and purposes of the institutions that are benefitted, (2) the nature of the aid the govern-

ment provides, (3) the resulting relationship between the government and the religious authority, and (4) the divisive political potential of the aid. *Lemon v. Kurtzman, supra.* While this test cannot be precisely applied to the instant case, it does provide the Court some direction.

Although Mr. Lawrence Sanchez, the Director of Finance for Bernalillo County, testified that no funds were allocated to the display of the seal, it cannot be gainsaid that some cost must be attributable to the display of the seal and, therefore, to the display of the cross and motto. No evidence was offered by the Plaintiffs, however, to give the Court direction as to what amount of County funds are allocable to the display of the motto and cross. But the funds that Bernalillo County provides for the display of the motto and the cross, in the Court's view, are minimal. Moreover, the Court perceives no benefit to be gained by any religious group by the display of the cross and the motto. Similarly, the Court finds no relationship between the County and any religious authority in the display of the cross and the motto on the seal. And it would require a singular subtlety of mind to ideate a divisive potential among the County and any religious or non-religious groups by the display of the cross and the motto.

### Free Exercise Clause

As stated earlier, Mr. Friedman characterized himself as an atheist and as an ethnic Jew. He did not articulate, however, how the symbolism of the cross and the motto, as perceived by him, affected his right to believe or not to believe in a deity or how it affected his ethnicity. And, as stated earlier, individual preferences, as sincere as they may be, cannot be the constitutional standard.

Under the Establishment Clause and the Free Exercise Clause, the Court finds that the Bernalillo County seal passes Constitutional muster. In this Court's view, the seal is more of a historical symbol than a religious expression. Therefore, it would be palatably unreasonable to require the removal of the passive and benign symbols of the cross and the motto from the seal.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs take nothing by their complaint against Defendant and that each party bear their own costs.