**AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI, John Kratochvil, Nana Kratochvil, Sameerah Muhammed, Felder Rushing, Stephen Silberman, Plaintiffs,**

v.

**The MISSISSIPPI STATE GENERAL SERVICES ADMINISTRATION, Jimmy Palmer, Director, and Mississippi Bureau of Capital Facilities, Pat Simon, Director, Defendants.**

**Civ. A. No. J86–0810(B).**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 16, 1987.

Kenneth J. Rose, Jackson, Miss., for plaintiffs.

T. Hunt Cole, Asst. Atty. Gen., Jackson, Miss., for defendants.

## ORDER

BARBOUR, District Judge.

This case presents the questions whether the display of a lighted cross on a state owned building during the Christmas season is unconstitutional under the Establishment Clause of the First Amendment to the Constitution of the United States and, if so, whether the additional display of other secular symbols of the season on other sides of the same building at the same time renders the display of the cross constitutional. The questions are before the Court on Plaintiffs' Motion for a Preliminary Injunction.

After a hearing on the merits, during which the Court heard several witnesses and received two groups of photographs into evidence, the Court announced its opinion from the bench and issued the preliminary injunction. This written opinion replaces the oral bench opinion.

## FACTS

Beginning in early December for at least the past seven years, Defendants, or their predecessors, have caused to be illuminated throughout the month of December, the Christmas season, an image of a Latin cross (a cross whose base is longer than the other three arms) on the Walter Sillers Building, a state office building, in downtown Jackson, Mississippi. The image is created at night on the east side of the building by leaving lighted the interior lights of certain offices while shutting out the lights or drawing the curtains of the other offices. The lighted windows form the shape of a cross extending the full height and breadth of the twenty-story office building. The image of the cross is large, bright and distinct. It can be seen easily for miles. The Sillers Building, one of the few buildings of its height in Jackson, occupies a prominent place in the downtown area, which is itself prominent by its elevation. Consequently, the cross on the Sillers building dominates the skyline of Jackson as seen from the east. The view is particularly striking from Interstate Highway 55, which is heavily travelled by both interstate and local traffic and which provides a principal route of access to the business and governmental districts downtown. The cross is also easily visible from parts of the downtown business district and from some residential neighborhoods. At night the giant cross of light, so prominent on the skyline of the city, creates a striking display of unmistakable, solemn religious significance.

Until this year, the cross was the only image created on the building. This year, in an effort to bring the display in line with the law, Defendants have begun to display on the three other sides of the building additional, more secular symbols, such as bells, a Christmas tree and the words

"Joy" and "Peace". Since only one symbol adorns each side of the building, only one is visible at a time from most points. The cross remains on the prominent east side of the building.

The cost of maintaining the illumination of the cross has been borne primarily by the State, although there is evidence that a private donation was received in 1985 to cover a part of the cost.

On February 19, 1986, Plaintiffs' attorney wrote the Defendants to protest the practice of lighting the cross and to request that the Defendants declare whether the cross would again be illuminated for the holiday season. This request was followed by phone calls and by another letter on October 31, 1986, restating the position. Defendants never gave the Plaintiffs a definitive answer about their intentions, and again illuminated the cross beginning on December 6, 1986.

The cross is the symbol of the Christian religion. *See, e.g., American Civil Liberties Union v. City of St. Charles*, 794 F.2d 265, 271 (7th Cir.1986); *American Civil Liberties Union v. Rabun County Chamber of Commerce*, 510 F.Supp. 886, 888 (1981). Although more traditionally recognized as an Easter rather than a Christmas symbol because it reminds Christians of the passion and resurrection of Christ their Savior, the cross is connected in the minds of Christians with Christmas because without the birth of Christ into the world, his sacrifice upon the cross would not have been possible. Although not understanding or believing the significance of the cross to Christians, those of other faiths and even those who profess no faith in the existence of a higher being recognize the cross as the symbol of Christianity.

The Defendants have attempted to assert no secular purpose for the display of the cross. The Governor of the State testified that the display of the cross on the Sillers Building has been traditional since 1979 at least. He denied that its purpose was to endorse or promote a religion. He admitted that the other symbols were added in an attempt to allay fears that the state

intended to endorse Christianity and also to attempt to conform the Sillers Building display to constitutional standards as enunciated by *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) and its progeny. However, from the evidence presented, it is clear that the overriding and motivating purpose of the display is to convey a message of endorsement of the Christian religion.

## STANDING

Plaintiffs are various individual residents of Jackson and their representative. Each, either in testimony or through affidavits filed with the Motion for a Preliminary Injunction, expressed his or her belief that the illumination of the cross is offensive to the doctrine of separation of church and state as developed under the Establishment Clause of the First Amendment of the United States Constitution. In addition each Plaintiff has made sufficient allegations of a direct, personal connection to the controversy to satisfy the requirements of standing. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 487 n. 22, 102 S.Ct. 752, 766 n. 22, 70 L.Ed.2d 700 (1982) (plaintiffs have standing when forced to assume special burdens to avoid unwelcome government sponsored or endorsed manifestations of religion); *American Civil Liberties Union v. Rabun County Chamber of Commerce*, 698 F.2d 1098, 1108 (11th Cir.1983) (plaintiffs demonstrate a sufficient injury to confer standing when they allege they will not use a public park containing an illuminated cross). Plaintiffs are residents of Jackson. The cross is visible in and around the downtown and from the major north-south arteries of the city. The activity in controversy affects Plaintiffs' use and enjoyment of much of the city. In addition, two of the Plaintiffs can see the cross from their home.

## INJUNCTION FACTORS

In determining whether to issue a preliminary injunction the Court must consider four factors: (1) Will the Plaintiffs suffer

irreparable harm if the injunction is not issued? (2) How does that harm to the Plaintiffs compare to the harm, if any, to the Defendants if the injunction is issued? (3) Is there a substantial likelihood that the Plaintiffs will prevail on the merits? (4) What is the public interest? *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).

■ Any violation of First Amendment rights may be considered an irreparable harm in a request for an injunction. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

The granting of an injunction will cause no material harm to the Defendants. If anything, the injunction will save the taxpayers of the State of Mississippi the cost of the display. Of course, it is immaterial that the majority of those taxpayers would approve the expenditure.

The public interest must fall on the side of Constitutional rights of individuals over the will of the majority. That is the underlying fundamental of the Bill of Rights of our Constitution.

Finally, as discussed below, there is a substantial likelihood that the Plaintiffs will prevail on the merits of the case.

## CONTROLLING LAW ON THE MERITS

■ The parties appear to agree that this case is controlled by *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). In *Lynch v. Donnelly* the Supreme Court applied the three-part test announced in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Under the *Lemon* test, the state activity must first have a secular purpose. *Id.* If it does have a secular purpose, then its principal effect must be secular or neutral toward religion. *Id.* Finally, the activity must not foster an excessive government entanglement with religion. *Id.*

In a case such as this, the first question is whether the state activity has any sec-ular purpose. If there is no "clearly secular purpose" for the activity, then the activity is illegal, and the second and third criteria need not even be considered. *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29, 43 (1985). This is a subjective test; it depends upon what the Defendants intended to do by their action. *Wallace v. Jaffree*, 472 U.S. at 56, 105 S.Ct. at 2490, 86 L.Ed.2d at 43 ("... the First Amendment requires that a statute must be invalidated if it is entirely *motivated* by a purpose to advance religion"); *Lynch v. Donnelly*, 465 U.S. at 680, 104 S.Ct. at 1362 ("The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was *motivated* wholly by religious considerations."); *Id.* at 691, 104 S.Ct. at 1368 (O'Connor, J., concurring) ("The proper inquiry under the purpose prong of *Lemon*, I submit, is whether the government *intends* to convey a message of endorsement or disapproval of religion".[1]) (emphasis added throughout cite). Accordingly, if the government actors intended by their official activity to create a display of singularly religious significance, then their action was illegal.

■ In applying the first part of the *Lemon* test the Court finds that the Defendants have made no effort to prove a "clearly secular purpose" for the display of the cross. Although the Governor of Mississippi testified that the state did not intend to endorse the Christian to the exclusion of any other religion, the Court specifically finds that despite the disavowals by the Governor, the only purpose which can be ascribed to the display of the cross is to either advance or endorse the Christian religion. The display of the cross thus fails the first part of the *Lemon* test and must be declared unconstitutional. Although it is not necessary to move to the second part

---

1. This test expressed by Justice O'Connor in her concurring opinion was specifically adopted by the Supreme Court in *Wallace v. Jaffree*, 472 U.S. at 43 n. 42, 105 S.Ct. at 2490 n. 42, 86 L.Ed.2d at 43 n. 42.

of the *Lemon* test, the Defendants fail that part also because the principal effect of the display is not secular or neutral toward religion, but is just the opposite; its principal effect is profoundly Christian.

Defendants have attempted to defend their activity by invoking the precedent of *Lynch v. Donnelly*, but the case must be distinguished on the facts. As noted by the dissenting justices in that case, "The Court's decision implicitly leaves open questions concerning the constitutionality of the public display . . . of other distinctly religious symbols such as a cross." 465 U.S. at 695, 104 S.Ct. at 1370 (Brennan, J., dissenting).

In *Lynch v. Donnelly* the City of Pawtucket, Rhode Island, erected a large Christmas display in a privately owned park located in the major business district of the City. The display included "many of the figures and decorations traditionally associated with Christmas, including, among other things, a Santa Claus house, reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cutout figures representing such figures as a clown, an elephant and a teddy bear, hundreds of colored lights, a large banner that reads 'Seasons Greetings', and the creche at issue here." 465 U.S. at 671, 104 S.Ct. at 1358, 79 L.Ed.2d at 608. The creche had been included in the Christmas display for 40 or more years. *Id.* Allowing the creche to remain in the display, the Court held that there was insufficient evidence in the record for the district court to conclude that the creche had been installed for a religious purpose only. 465 U.S. at 680, 104 S.Ct. at 1362, 79 L.Ed. at 615. The Court found instead that viewed together with the rest of the conspicuously commercial display, the creche was meant not as a wholly religious symbol, but as a symbol also of "the historical origins of this traditional event long recognized as a National Holiday." *Id.*

In this case in contrast, the Court finds substantial evidence that the cross was intended exclusively as a religious symbol. The cross is a sectarian symbol with no secular significance. It is displayed prominently and alone. The Court can conclude nothing other than that the purpose of the Defendants in displaying the cross is to endorse the Christian religion, an unconstitutional action.

■ The fact that the Defendants have decided this year to include other non-religious symbols on other sides of the building does not make the display Constitutional. Even with the additions the Court must conclude from the evidence that Defendants' purpose for displaying the cross is religious. The fact that until this year the cross was the only symbol displayed is convincing proof of the Defendants' religious purpose. The belated addition of the secular symbols is at best weak evidence that the Defendants' purpose for displaying the cross is secular. Defendants have admitted that the new symbols were added to imitate the display approved in *Lynch v. Donnelly* and to "allay the fears" of those offended by the cross.

Even with the new symbols, however, the display of the cross remains so religious *in effect* that no secular purpose can be ascribed to it. If the purpose were in doubt, the religious effect alone would be sufficient to make the display illegal under the *Lemon* test. The expanded display is not comparable to the one in *Lynch v. Donnelly*. Taken as a whole, the Sillers Building display remains solemn and religious.

The addition of the new symbols does little to change the effect of the cross, because placed one on each side of the building the symbols appear less as one single than as four separate displays. Although two may be viewed at once, the symbols are most distinct when viewed straight on. Created by lighted windows, the symbols are dim and indistinct when viewed obliquely. Consequently, the most striking view of the cross is necessarily a view of the cross alone.

Finally, the Court notes that in no other federal case either before or since *Lynch v. Donnelly* has the public display of a cross

by a state or subdivision thereof been found to be constitutional.[2]

Thus, there is a strong likelihood that the Plaintiffs will prevail on the merits.

## CONCLUSION

Accordingly, the Court finds in favor of the Plaintiffs in regard to all four factors and must issue an injunction against the Defendants enjoining them from illuminating a cross on the Sillers Building, or any other state owned building until further order of the Court.

**2.** *American Civil Liberties Union of Illinois v. City of St. Charles,* 794 F.2d, 265 (7th Cir.1986) (lighted cross on the television antenna of fire station, prominent part of Christmas display which included Christmas trees, wreaths, snowflakes, reindeer, Santa Claus and other symbols); *Libin v. Town of Greenwich,* 625 F.Supp. 393 (D.Conn.1985) (cross on facade of volunteer fire company fire house with three wreaths and a few strings of lights); *Friedman v. Board of County Commissioners of Bernalillo,* 781 F.2d 777 (10th Cir.1985) (cross on county seal); *Greater Houston Chapter of ACLU v. Eckels,* 589 F.Supp. 222 (S.D.Tex.1984) (three crosses and a star of David in county park); *Gilfillan v. City of Philadelphia,* 637 F.2d 924 (3rd Cir.1980) (city financed platform and cross used by Pope John Paul II to celebrate mass and deliver a sermon during his 1979 visit to Philadelphia); *Civil Liberties Union of Georgia v. Rabun County Chamber of Commerce,* 698 F.2d 1098 (11th Cir.1983) (illuminated Latin cross on state park property).