781 F.2d 777
 54 USLW 2364
 Al FRIEDMAN, Plaintiff-Appellant,
v.
BOARD OF COUNTY COMMISSIONERS OF BERNALILLO COUNTY, David
Santillanes, Chairman; Juven Sanchez, Robert
Hawk, Wray Simmons, E.R. (Corky) Morris,
Members, Defendants-Appellees,
American Jewish Congress and the Rutherford Institute, Amici Curiae.
 No. 82-1064.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 26, 1985.
 
 Paul A. Phillips, Cooperating Atty., A.C.L.U. of New Mexico, Albuquerque, N.M., for plaintiff-appellant.
 Casey Shpall, Mountain States Legal Foundation, Denver, Colo., Roger J. Marzulla, Maxwell A. Miller, and Michael R. Perna also of Mountain States Legal Foundation, Denver, Colo., and Hunter L. Geer, Albuquerque, N.M., on the briefs for defendants-appellees.
 Ronald A. Krauss, Lois C. Waldman, and Marc D. Stern, American Jewish Congress, New York City, and Michael G. Sutin, Albuquerque, N.M., filed a brief for amicus curiae American Jewish Congress, et al.
 John W. Whitehead and D. Kevin Ikenberry, of the Rutherford Institute, Manassas, Va., filed an amicus curiae brief.
 Before HOLLOWAY, Chief Judge, McWILLIAMS, BARRETT, McKAY, LOGAN, SEYMOUR, and MOORE, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 This case challenges a county government's use of a seal bearing, among other things, a latin cross and the Spanish motto, "CON ESTA VENCEMOS," under the Establishment and Free Exercise Clauses of the First Amendment of the United States Constitution and under the New Mexico Constitution. The district court found no constitutional violations, Johnson v. Board of County Commissioners, 528 F.Supp. 919, 925 (D.N.M.1981), and a divided panel of this court affirmed. On rehearing en banc, we now vacate our earlier opinions and reverse on Establishment Clause grounds.I
 
 
 2
 The circular seal that plaintiff challenges in this action under 42 U.S.C. Sec. 1983 contains the phrases, "Bernalillo County," and "State of New Mexico," separated by two diamonds along its outermost green edge. Within an inner circle, the Spanish motto, "CON ESTA VENCEMOS," which translates into English as, "With This We Conquer," or "With This We Overcome," arches over a golden latin cross,[1] highlighted by white edging and a blaze of golden light. The motto and cross are set in a blue background depicting the sky over four darker blue mountains and a green plain. Eight white sheep stand on the plain. Copies of the seal follow as an appendix to this opinion.
 
 
 3
 There is no record of when the county originally adopted the seal or of its purpose in doing so. The seal was used, however, on some county documents as early as 1925, and again from at least 1945 to 1956. Since 1973, the seal has been displayed on county documents, stationery, motor vehicles, and the shoulder patches of sheriff's department officers. According to testimony, officials expanded use of the seal merely to identify the county as a governmental unit distinct from Albuquerque.
 
 
 4
 Yet at least one county commissioner testified that at the time use of the seal was expanded he knew the cross represented the role of the Catholic Church in the settlement of the Southwest. Specifically he thought that the cross referred to priests and friars who accompanied Spanish conquistadors into the area. Two historians and an expert in heraldry testified that the cross on the seal represented Catholicism, Christianity, and the Spaniards. One of the historical experts also admitted that religious conversion of the Native American population in New Mexico sometimes was accomplished through force; the other verified use of Spanish Inquisition tactics in New Mexico.
 
 
 5
 The evidence is not completely clear on the meaning of "ESTA" or "this" in the motto, but plaintiff's expert on the Spanish language testified that the only thing "ESTA" referred to very clearly was the cross. Even one of defendants' expert historians testified that, if the cross were eliminated, his interpretation of the seal's meaning, i.e., "We are overcoming with our Christian heritage," would be less than obvious. But he thought "ESTA" literally referred to the entire seal. Lay witnesses for the plaintiff and the defendants understood the "this" of the motto to be the cross.
 
 
 6
 The interpretation to be given the appearance of the sheep on the seal also was the subject of some dispute, generally divided along a layperson-expert line. Plaintiff testified that the sheep apparently represented the "flock of Jesus." The defendants' experts, on the other hand, saw the sheep as symbolic of the importance of the sheep-raising industry in Bernalillo County history, and not of the Christian "lamb of God" or "good shepherd" or "flock of Jesus."
 
 
 7
 The district court found no violation of the three-part Establishment Clause test of Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), having been persuaded by the testimony of the defendants' experts that the significance of the sheep and cross was solely historical.[2] Johnson, 528 F.Supp. at 92325. The court also characterized the amount of money the county must spend for display of the motto and cross as minimal, and dismissed the Free Exercise claim. Id. at 925. Although the district court recited the claim under Article II, Section 11 of the New Mexico Constitution and said it was properly joined under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it did not discuss explicit reasons for rejecting it. Id. at 920. Because we find the Establishment Clause issue dispositive, we do not address the Free Exercise Clause and New Mexico constitutional claims.
 
 II
 
 8
 The district court correctly began its analysis with recitation of the three independent tests of Lemon, 403 U.S. at 612-13, 91 S.Ct. at 2111. Although the Supreme Court has been unwilling to endorse Lemon as the "be-all" and "end-all" in Establishment Clause cases, it has continued to apply it almost exclusively. See Wallace v. Jaffree, --- U.S. ----, ----, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (U.S. June 4, 1985); Lynch v. Donnelly, 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984); cf. Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) (Lemon test not used in Establishment Clause challenge to state legislature's use of chaplain; use upheld); Larson v. Valente, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) (Lemon test not used in Establishment Clause challenge to charitable solicitation law; law invalidated). See generally Smith, Some Observations on the Establishment Clause, Pepperdine L.Rev. 457, 469 (1984); Van Alstyne, Trends in the Supreme Court: Mr. Jefferson's Crumbling Wall--A Comment on Lynch v. Donnelly, 1984 Duke L.J. 770, 782 (1984).
 
 
 9
 Under Lemon the Establishment Clause is violated if any of the three following conditions are not met. First, the governmental action in question must have a secular purpose. Second, its principal or primary effect must be one that "neither advances nor inhibits" religion. And, third, the action must not foster an excessive government entanglement with religion. Lemon, 403 U.S. at 612-13, 91 S.Ct. at 2111. The goal is the prevention of "unnecessary intrusion of either the church or the state upon the other." Lynch, 465 U.S. at 672, 104 S.Ct. at 1358. Each prong of the Lemon test is independent. The challenged government action must survive all three to be allowed under the Establishment Clause. See id. --- U.S. at ----, 105 S.Ct. at 2489; Stone v. Graham, 449 U.S. 39, 40, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980); Bell v. Little Axe Independent School District, 766 F.2d 1391, 1402 (10th Cir.1985).
 
 III
 
 10
 Our review of the record convinces us that the district court's finding in favor of the county on the second prong of Lemon--the "effect" test--was clearly erroneous.[3] "The Establishment Clause prohibits the government from making adherence to a religion relevant in any way to a person's standing in the political community." Lynch, 465 U.S. at 687, 104 S.Ct. at 1366 (O'Connor, J., concurring). "The effect prong asks whether, irrespective of government's actual purpose, the practice ... conveys a message of endorsement or disapproval. An affirmative answer ... should render the challenged practice invalid." Id. at 690, 104 S.Ct. at 1368. In other words, the existence of a non-secular effect is to be judged by an objective standard, which looks only to the reaction of the average receiver of the government communication or average observer of the government action. This contrasts with the subjective examination under the purpose test. If the challenged practice is likely to be interpreted as advancing religion, it has an impermissible effect and violates the Constitution, regardless of whether it actually is intended to do so.
 
 
 11
 In addition, the resulting advancement need not be material or tangible. An implicit symbolic benefit is enough. See Larkin v. Grendel's Den, 459 U.S. 116, 125, 103 S.Ct. 505, 511, 74 L.Ed.2d 297 (1982). In Larkin the Supreme Court struck down a Massachusetts statute granting churches and schools the de facto power to veto liquor license applications for businesses within a certain distance of the institutions. The Court stated:
 
 
 12
 "[T]he mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to religion in the minds of some by reason of the power conferred. It does not strain our prior holdings to say that the statute can be seen as having a 'primary' and 'principal' effect of advancing religion."
 
 
 13
 Id. at 125-26, 103 S.Ct. at 511 (emphasis added). Similarly we have held that even the unspoken grant of a state "imprimatur" to religious activity in primary schools is impermissible under the effect test. See Little Axe, 766 F.2d at 1405. "The Government may depict objects with spiritual content, but it may not promote or give its stamp of approval to such spiritual content." Allen v. Hickel, 424 F.2d 944, 948 (D.C.Cir.1970).
 
 
 14
 Some uses of the seal at issue in the case before us might not give an appearance or imprimatur of impermissible joint church-state authority. Use similar to a notary seal on county documents or a one-color depiction in which the seal and especially the cross are not easily discernible might not pass the threshold. But this is not such a case. Here the county prominently displays the seal on county vehicles and uses it to identify law enforcement officers. Plaintiffs presented highly persuasive evidence that the seal leads the average observer to the conclusion that the county government was "advertising" the Catholic faith. A rabbi testified that the seal suggested to him that there was an "officialness" about Christianity in the state and county. In addition, he pointed out that the cross had at times symbolized outright oppression and persecution of Jewish people. It cannot be denied, as one amicus brief argues, that the cross probably would have a similarly threatening connotation for a Lebanese Moslem or Northern Irish Protestant. We are compelled to draw the same conclusion with regard to the reactions of Native Americans who reside in Bernalillo County. The seal certainly does not memorialize their "Christian heritage" but rather that of those who sought to extinguish their culture and religion.
 
 
 15
 At the least, then, the seal as used conveys a strong impression to the average observer that Christianity is being endorsed. It recalls a less tolerant time and foreshadows its return. Religious minorities may not be made to feel like outsiders because of government's malicious or merely unenlightened endorsement of the majority faith. It is not decisive that defendants' heraldic and historical experts, and lay witnesses who are members of Christian sects, reacted less emotionally to the seal. It is to be expected that members of Christian sects would be more comfortable with a seal endorsing their beliefs than would individuals who adhere to different beliefs. The comfort of the majority is not the main concern of the Bill of Rights. Rather, its
 
 
 16
 "very purpose ... was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to ... freedom of worship ... and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections."
 
 
 17
 West Virginia State Board of Education v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943). The Supreme Court "has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all." Wallace, --- U.S. at ----, 105 S.Ct. at 2487 (emphasis added).
 
 
 18
 This case is not like the creche display upheld in Lynch, 465 U.S. at 685, 104 S.Ct. at 1365. The religious significance of the cross, as of the creche, is undisputed; the district court correctly observed that any statement to the contrary would be disingenuous.[4] Johnson, 528 F.Supp. at 924. But the seal, unlike the creche, pervades the daily lives of county residents. It is not displayed once a year for a brief period on a single parcel of government land. Rather it appears on all county paper work, on all county vehicles, even on county sheriff's uniforms. Further, Bernalillo County residents do not view the cross and motto in the context of a generally secular commercial display, as Pawtucket, Rhode Island, residents do the creche. The context of the cross and motto is quite different. The cross is the only visual element on the seal that is surrounded by rays of light. The motto may be fairly regarded as promoting the religion the cross represents. Indeed, that religion seems to be embraced as the instrument by which the county "conquers."
 
 
 19
 A person approached by officers leaving a patrol car emblazoned with this seal could reasonably assume that the officers were Christian police, and that the organization they represented identified itself with the Christian God. A follower of any non-Christian religion might well question the officers' ability to provide even-handed treatment. A citizen with no strong religious conviction might conclude that secular benefit could be obtained by becoming a Christian. "When the power, prestige, and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain." Abington School District v. Schempp, 374 U.S. 203, 221, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963) (quoting Engel v. Vitale, 370 U.S. 421, 430-31 (1962) ).
 
 
 20
 In view of the seal's composition and use, the county has violated the Establishment Clause. We therefore REVERSE.
 
 APPENDIX A
 
 21
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 22
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 McWILLIAMS, Circuit Judge, dissenting:
 
 23
 I adhere to the opinion of the panel which initially heard this case and the views expressed therein by Chief Judge Holloway.*
 
 BARRETT, Circuit Judge, dissenting:
 
 24
 I join Judge McWilliams in dissent based upon the views expressed by Chief Judge Holloway* in his fifteen page opinion written for the panel majority which rejected the challenges raised by plaintiff-appellant under the Establishment Clause, the Free Exercise Clause, and the New Mexico Religion Clause. That learned opinion properly concluded "[T]hat the Bernalillo County seal does not violate either the Establishment or Free Exercise Clauses of the First Amendment or the Religion Clause of the New Mexico Constitution."
 
 
 25
 In addition to the views expressed in Chief Judge Holloway's opinion for the panel majority, I wish to express the following views:
 
 
 26
 The application of the Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) test is helpful only if applied in a common sense perspective. In this great land of amalgamated races, nationalities and religious backgrounds, we must be cognizant of significant aspects of our rich history and culture. It was this premise that the Supreme Court relied upon in Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) in holding that there was no constitutional infirmity in public funding and display of the historical national Christmas season scene of the creche, a specific religious symbol, in conjunction with secular symbols such as reindeer, Santa Claus, sleighs, etc. The Court there held that the display was justified because of legitimate secular purposes, and that a dual purpose can be served in the public display of a religious symbol. Such is the case at bar. The creche in Lynch v. Donnelly represented a Christian religious symbol. However, it did not involve a First Amendment entanglement violation because the Supreme Court held that the deep secular, historical and cultural aspects of the entire display were more weighty on the constitutional scale. Here, too, the display of the Christian symbol of the Cross, in combination with the secular symbols, has deep historical and cultural significance to Bernalillo County; thus, as in Lynch, the Cross and the Motto serve a dual purpose, justifying the entire seal because of legitimate secular purposes in the overall scheme.
 
 
 27
 During the course of oral argument in this en banc hearing, counsel for the defendants-appellees asked, in the sense of the "effects" prong of Lemon v. Kurtzman, how this court could justify the invocation of God's grace upon its deliberations which has been historically employed in the opening of each daily court session. There was no response. This nation has been recognized as one of religious people; therefore, a certain amount of church-state "entanglement" will always exist. Abington School Dist. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).
 
 
 28
 We are all aware that public school graduation ceremonies have historically included a call upon God's blessings and guidance in the course of invocation and benediction exercises. This practice has a long established historical tradition. The line of separation of church and state required under the Establishment Clause is neither straight nor easily determined. Committee for Public Education & Religious Liberty v. Regan, 444 U.S. 646, 100 S.Ct. 840, 63 L.Ed.2d 94 (1980). The First Amendment does not forbid all reference to religion in public schools; rather, it requires that religion be neither advanced or inhibited. Committee for Public Education v. Nyquist, 413 U.S. 756, 93 S.Ct. 2993, 37 L.Ed.2d 948 (1973). In the context of the seal of Bernalillo County involved in this case, it is my view that the religious symbols do not advance religion.
 
 
 29
 Chief Justice Burger, in dissent in Wallace v. Jaffree and Smith v. Jaffree, --- U.S. ----, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) pertinently stated:
 
 
 30
 Some who trouble to read the opinions in this case will find it ironic--perhaps even bizarre--that on the very day we heard arguments in this case, the Court's session opened with an invocation for Divine protection. Across the park a few hundred yards away, the House of Representatives and the Senate regularly open each session with a prayer. These legislative prayers are not just one minute in duration, but are extended, thoughtful invocations and prayers for Divine guidance. They are given, as they have been since 1789, by clergy appointed as official chaplains and paid from the Treasury of the United States. Congress has also provided chapels in the Capitol, at public expense, where Members and others may pause for prayer, meditation--or a moment of silence.
 
 
 31
 * * *
 
 
 32
 * * *
 
 
 33
 ... Congress amended the statutory Pledge of Allegiance 31 years ago to add the words "under God" ... Do the several opinions in support of the judgment today render the Pledge unconstitutional? ...
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 This Court's extended treatment of the "test" of Lemon v. Kurtzmann, 403 U.S. 602 [91 S.Ct. 2135, 29 L.Ed.2d 745] (1971), suggests a naive pre-occupation with an easy, bright-line approach for addressing constitutional issues. We have repeatedly cautioned that Lemon did not establish a rigid caliper capable of resolving every Establishment Clause issue, but that it sought only to provide "signposts" ... our responsibility is not to apply tidy formulas by rote; our duty is to determine whether the statute or practice at issue is a step toward establishing a state religion ... "the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow." School District v. Schempp, 374 U.S. 203, 208 [83 S.Ct. 1560, 1564, 10 L.Ed.2d 844] (1963) (concurring opinion) ... The mountains have labored and brought forth a mouse. [Footnotes omitted].
 
 
 37
 --- U.S. at ----, ----, 105 S.Ct. at 2505, 2507.
 
 
 38
 I would AFFIRM the district court's common-sense opinion.
 
 APPENDIX
 
 39
 Before HOLLOWAY, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.
 
 
 40
 HOLLOWAY, Chief Judge.
 
 
 41
 Plaintiff appeals the district court's ruling that the county seal of Bernalillo County, New Mexico, bearing, among other things, a cross and the motto "CON ESTA VENCEMOS," does not violate the Establishment and Free Exercise Clauses of the First Amendment and the Religion Clause of the New Mexico Constitution. We are persuaded that the seal, as used in the circumstances of this case, does not violate the federal or state constitutional provisions, and we affirm.
 
 
 42
 * The factual background
 
 
 43
 The facts of the case are summarized in the district court's opinion, Johnson v. Board of County Commissioners of Bernalillo County, 528 F.Supp. 919, 920-23 (D.N.M.1981), and are not in dispute.
 
 
 44
 The case concerns the county seal of Bernalillo County, New Mexico. As the district court explained, the seal "is a circle around the edge of which appear the words: 'County Commissioners--Bernalillo County, New Mexico.' Within an inner circle, the words 'CON ESTA VENCEMOS' stand against a background depicting the sky. Below these words is a cross centered over four blue mountains. Beneath the mountains is a green plain against which eight sheep are imposed." Id. at 920-21. Copies of the seal from Plaintiff's Exhibits 3 and 4 are attached as appendices to this opinion. Expert testimony indicated that the motto "CON ESTA VENCEMOS" translates into English as "with this we conquer," "with this we overcome," or "with this we win." Id. at 922.
 
 
 45
 Although there is no record of the original adoption of the seal, III R. 105, 109-10, it appeared on certain county documents as early as 1925. 528 F.Supp. at 921; Defendant's Exhibit A; III R. 43, 110. Since 1973, the seal has appeared on county documents and stationery and has been displayed on county motor vehicles and on shoulder patches of officers of the Sheriff's department. 528 F.Supp. at 921; Plaintiff's Exhibits 1-4; III R. 65-66, 91, 98, 123, 132-33.
 
 
 46
 Plaintiff brought this Sec. 1983 action seeking a declaratory judgment and an injunction to prevent defendants from displaying the seal and from appropriating funds for the display of the seal. Plaintiff Friedman, an atheist and an ethnic Jew, contended that the seal propagated the Christian faith and therefore violated the Establishment and Free Exercise Clauses of the First Amendment, as well as Article II, Section 11 of the New Mexico Constitution.[1]
 
 
 47
 The district court rejected the constitutional claims of plaintiff challenging the seal. The court recited expert testimony on the history of Catholicism in New Mexico. The court pointed to the testimony of Mr. Johnson, the curator of history at the Albuquerque Museum, that the cross in the seal was symbolic of the long history of Catholic exploration, the Church's missionary endeavors, and the impact of the church on early Hispanic life in the region. Id. at 922-23. The court also referred to testimony by Dr. Charles Polzer, a Jesuit priest and ethno-historian from the University of Arizona, that sheep raising was the primary industry in colonial Bernalillo County. In his view, the sheep could not be a religious symbol since such a symbol would require a "life-form" which does not appear in the seal. Dr. Polzer testified that Christianity played a significant role in southwestern history. He viewed the cross not as a religious symbol but as an historic symbol of the Christian and Spanish heritage of New Mexico. Mr. Beckwith, an expert in heraldry, also found the seal to be symbolic of the Spanish heritage of New Mexico and the sheep raising industry of the region. Id. at 923.
 
 
 48
 The court then dealt with the three-part test of Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), under the Establishment Clause. First, the court found that there was a secular legislative purpose served by the seal. The court acknowledged that the cross had religious significance, but explained that Catholicism cannot be separated from New Mexico history. The court pointed to the religious significance of geographical terms adopted in the State such as Santa Fe and the Sangre de Cristo mountain range. The court found that the purpose of the seal in its present form is to authenticate official documents and communications and to identify County property and personnel of the Sheriff's office. The court also found that the seal was used to promote appreciation of the heritage, history and cultural pride of Bernalillo County.
 
 
 49
 Next, the court considered the effect of the seal under the second prong of the Lemon test. The court acknowledged that although government may depict objects with a spiritual content, it cannot promote or give its stamp of approval to such spiritual content. The court concluded that the cross and motto had only a benign reference to religion. The court viewed the seal as an iconographic illustration of the rich cultural heritage of Bernalillo County. The court held that the principal or primary effect did not advance or inhibit religion. Id. at 924.
 
 
 50
 The court then considered the third part of the test--whether excessive government entanglement resulted from the use of the seal. The court found that although no evidence was offered as to the amount of county funds allocable to the display of the motto and the cross, the provision of funds therefor was minimal. The court perceived no benefit gained by any religious group by the display of the cross and motto.
 
 
 51
 The court also concluded that the county seal did not violate the Free Exercise Clause. In the court's view the seal was more of an historical symbol than a religious expression.
 
 
 52
 The Memorandum Decision And Order did not discuss reasons for rejecting the claim that the seal violated Article II, Section 11 of the New Mexico Constitution. The court recited the allegation and held that jurisdiction of this state-law issue was properly before it under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus the court had the New Mexico constitutional claim before it and implicitly rejected the claim.
 
 II
 The Establishment Clause
 
 53
 The First Amendment declares in part that "Congress shall make no law respecting an establishment of religion." This constitutional principle has been held applicable to the states through the Fourteenth Amendment for some time. See e.g., Widmar v. Vincent, 454 U.S. 263, 271 n. 8, 102 S.Ct. 269, 275 n. 8, 70 L.Ed.2d 440 (1981). The Establishment Clause challenge presents what we feel is a close question and the most serious issue in this controversy.
 
 
 54
 In determining whether the adoption and use of the Bernalillo county seal violate the Establishment Clause, we recognize at the outset "the inescapable tension between the objective of preventing unnecessary intrusion of either the church or the state upon the other, and the reality that, as the Court has so often noted, total separation of the two is not possible." Lynch v. Donnelly, 465 U.S. 668, 672, 104 S.Ct. 1355, 1358-59, 79 L.Ed.2d 604 (1984). The Court has rejected a "rigid, absolutist view of the Establishment Clause." Id., 465 U.S. at 678, 104 S.Ct. at 1361. "Rather than mechanically invalidating all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith--as an absolutist approach would dictate--the Court has scrutinized challenged legislation or official conduct to determine whether, in reality, it establishes a religion or religious faith, or tends to do so." Id.
 
 
 55
 In making this determination, the Court has emphasized its "unwillingness to be confined to any single test or criterion in this sensitive area." Id. Nevertheless, the Court typically examines Establishment Clause challenges under the three-part test first crystallized in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). To pass muster under this test, the challenged governmental conduct must (1) have a secular purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) avoid excessive entanglement of government with religion. Id., 403 U.S. at 612-23, 91 S.Ct. at 2111-16; see also Lynch v. Donnelly, 465 U.S. at 679-680, 104 S.Ct. at 1362.
 
 A. Purpose
 
 56
 The district court found that a secular legislative purpose is served by the county seal. The court held that the purpose of the seal, in its present form, "is to authenticate official documents, authenticate official communications, and to facilitate identification of County property and personnel of the County Sheriff's office. Simultaneously, it is used to promote the appreciation of the heritage, history and cultural pride of Bernalillo County." 528 F.Supp. at 924.
 
 
 57
 The court acknowledged that the "the cross has a religious significance." Id. at 924. The plaintiff vigorously argues that this finding demonstrates error in the court's conclusion that the Establishment Clause is not violated. We feel that the use of the cross, with the motto "CON ESTA VENCEMOS," is a most troubling problem.
 
 
 58
 While the cross is the primary symbol of Christianity, the Establishment Clause does not prohibit all references to objects of some religious significance. The Court has long recognized that "[w]e are a religious people whose institutions presuppose a Supreme Being." Zorach v. Clauson, 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952). In Lynch v. Donnelly, the Court rejected the claim that a city's use of a creche as part of a seasonal display violated the Establishment Clause. The Court emphasized the historical significance of the creche in finding that the secular purpose prong of the Lemon test was satisfied. 465 U.S. at 681, 682, 104 S.Ct. at 1363. Here the district court pointed to the various historic elements in the seal and their role in early county history: the predominant sheep raising industry, the Catholic missionaries, and the mountainous region all affected the settlement and development of the county.
 
 
 59
 Considering the circumstance of the use of the seal as a whole, we conclude that the trial court's finding that the seal as used has a permissible secular purpose is not clearly erroneous.[2] See Lynch v. Donnelly, at 681, 682, 104 S.Ct. at 1363 (majority opinion) (district court's finding that seasonal display lacks secular purpose was "clearly erroneous"); id. at 682 n. 11, 104 S.Ct. at 1363 n. 11 (Brennan, Marshall, Blackmun and Stevens, JJ., dissenting) (petitioners have not shown that trial court's detailed findings under the three-part analysis called for by prior Supreme Court cases were clearly erroneous);[3] see also ACLU of Georgia v. Rabun County Chamber of Commerce, Inc., 698 F.2d 1098, 1100-11 (11th Cir.1983) (district court's finding that erection of large, lighted cross on state property had religious purpose was not "clearly erroneous").
 
 B. Effect
 
 60
 The district court held that the seal did not have a principal or primary effect that advances or inhibits religion. The court noted that the cross and motto on the seal made "only a benign reference to religion" and did not have a "principal or primary effect that advances or inhibits religion." 528 F.Supp. at 924. Instead, the court held that the seal, viewed "against the historical panorama," was "an iconographic illustration of the rich cultural heritage of Bernalillo County." Id. Although the court recognized that the county "may not promote or give its stamp of approval" to Christianity, the court apparently was satisfied that the seal did not represent an official endorsement of religion. Id.
 
 
 61
 The question of the effect of the seal is also a troubling one. However, the Supreme Court in Lynch v. Donnelly stated that:
 
 
 62
 We can assume, arguendo, that the display [including the creche] advances religion in a sense; but our precedents plainly contemplate that on occasion some advancement of religion will result from governmental action. The Court has made it abundantly clear, however, that "not every law that confers an 'indirect' 'remote,' or 'incidental' benefit upon [religion] is, for that reason alone, constitutionally invalid."
 
 
 63
 465 U.S. at 683, 104 S.Ct. at 1364.
 
 
 64
 Justice Goldberg, while concurring in the holding of the Court that there was an Establishment Clause violation in Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), stated:
 
 
 65
 The First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact. It is of course true that great consequences can grow from small beginnings, but the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow.
 
 
 66
 Id., 374 U.S. at 308, 83 S.Ct. at 1616.
 
 
 67
 Considered in light of the historical background and the actual use of the county seal as shown in this record, we must agree with the conclusion of the district court that the principal or primary effect of the seal's use is not violative of the Establishment Clause.
 
 C. Entanglement
 
 68
 The district court also held that the seal did not engender excessive entanglement of government with religion. 528 F.Supp. at 924. We agree.
 
 
 69
 The Supreme Court has recognized that its "prior holdings do not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable. Zorach v. Clauson, 343 U.S. 306, 312, 72 S.Ct. 679, 683, 96 L.Ed. 954 (1952); Sherbert v. Verner, 374 U.S. 398, 422, 83 S.Ct. 1790, 1803, 10 L.Ed.2d 965 (1963) (Harlan, J. dissenting)." Lemon v. Kurtzman, 403 U.S. at 614, 91 S.Ct. at 2112. Here, there is no evidence of administrative contacts with an enduring entanglement between church and state as in Lemon. Id. at 619, 91 S.Ct. at 2114. Nor is there a showing of divisive political potential by use of the seal. Id. at 622, 91 S.Ct. at 2115. The record contains no substantial evidence of prohibited entanglement arising from past or present relationships of the county and church authorities. We therefore agree with the district court's conclusion that the county seal did not cause excessive entanglement of government with religion.
 
 
 70
 In sum, we agree with the district court's holding that the display of the county seal in the manner indicated in this record does not violate the Establishment Clause.
 
 III
 Free Exercise Clause
 
 71
 Plaintiff argues that the seal violates his rights guaranteed by the Free Exercise Clause. The district court held that plaintiff "did not articulate, however, how the symbolism of the cross and the motto, as perceived by him, affected his right to believe or not to believe in a deity or how it affected his ethnicity." 528 F.Supp. at 925. Plaintiff contends on appeal that "he is inhibited in his atheism by the requirement that his County's vehicles and stationery bear the cross." Appellant's Brief 21.
 
 
 72
 The Supreme Court has held that a plaintiff raising a free exercise challenge must show that the challenged governmental action burdens or interferes with the free exercise of his religion. See, e.g., United States v. Lee, 455 U.S. 252, 256-57, 102 S.Ct. 1051, 1054-55, 71 L.Ed.2d 127 (1982); Thomas v. Review Board, 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1431-32, 67 L.Ed.2d 624 (1981); Wisconsin v. Yoder, 406 U.S. 205, 215-19, 92 S.Ct. 1526, 1533-35, 32 L.Ed.2d 15 (1972); Sherbert v. Verner, 374 U.S. 398, 403-06, 83 S.Ct. 1790, 1793-95, 10 L.Ed.2d 965 (1963); see generally J. Nowak, R. Rotunda & J. Young, Constitutional Law 1053-63 (2 ed. 1983). We conclude that the use of the seal on county documents, stationery and property does not burden or interfere with the free exercise of religion. The display of the seal does not discourage plaintiff or other individuals from exercising their religious beliefs or nonbeliefs. Compare United States v. Lee, 455 U.S. at 256-57, 102 S.Ct. at 1054-55 (compulsary participation in social security system burdened free exercise of Amish religion); Thomas v. Review Board, 452 U.S. at 717-18, 101 S.Ct. at 1431-32 (state's denial of unemployment compensation to Jehovah's Witness who quit job producing turrets for military tanks burdened free exercise of religious faith); Wisconsin v. Yoder, 406 U.S. at 215-19, 92 S.Ct. at 1533-35 (compulsary public education beyond eighth grade burdened free exercise of Amish religion); Sherbert v. Verner, 374 U.S. at 403-06, 83 S.Ct. at 1793-95 (1963) (denial of state unemployment benefits burdened free exercise rights of Seventh Day Adventist who refused to work on Saturdays due to her religious beliefs).
 
 
 73
 We therefore hold that the seal does not violate the Free Exercise Clause of the First Amendment.
 
 IV
 The New Mexico Religion Clause
 
 74
 Last, we turn to the plaintiff's constitutional claim under Article II, Section 11 of the New Mexico Constitution. We agree with the conclusion of the district court that this state law claim is properly before us under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The district court refused defendant's request to abstain in a separate Memorandum and Order. We also agree that abstention is not appropriate in this case.[4]
 
 
 75
 Article II, Section 11 of the New Mexico Constitution provides that:
 
 
 76
 Every man shall be free to worship God according to the dictates of his own conscience, and no person shall ever be molested or denied any civil or political right or privilege on account of his religious opinion or mode of religious worship. No person shall be required to attend any place of worship or support any religious sect or denomination; nor shall any preference be given by law to any religious denomination or mode of worship.
 
 
 77
 We believe upon examination of New Mexico cases under this provision that the district court correctly concluded that the goals of N.M. Const. art. II, Sec. 11 are the same as those served by the Establishment and Free Exercise Clauses of the First Amendment. The New Mexico courts have discussed the First Amendment and N.M. Const. art. II, Sec. 11 together[5] and have cited federal case law under the First Amendment to support their findings under both the federal and state constitutional provisions.[6] We therefore hold, for the reasons stated in upholding the county seal under the Establishment and Free Exercise Clauses in supra Parts II and III, that the seal does not violate N.M. Const. art. II, Sec. 11.
 
 V
 Conclusion
 
 78
 Accordingly, we conclude that the Bernalillo County seal does not violate either the Establishment or Free Exercise Clauses of the First Amendment or the Religion Clause of the New Mexico Constitution.
 
 
 79
 AFFIRMED.
 
 
 
 [1]
 The cross occupies roughly half of the seal, which means the cross alone stands approximately one foot high when it appears on county vehicles of the type shown in the appendix, infra
 
 
 [2]
 The precise standard for our review of "constitutional facts," such as the district court's findings on each prong of the Lemon test, is unclear. In the Establishment Clause case of Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), Chief Justice Burger referred to the "clearly erroneous" standard, id. at 681, 104 S.Ct. at 1363, and the dissent by Justice Brennan agreed. Id. at 704 n. 11, 104 S.Ct. at 1375 n. 11 (Brennan, J., dissenting). Justice O'Connor's concurrence, however, referred to the district court's conclusion as "error as a matter of law." Id. at 694, 104 S.Ct. at 1369 (O'Connor, J., concurring). Further, in the later case of Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 508, 509, 104 S.Ct. 1949, 1964, 80 L.Ed.2d 502 (1984), the Court held that the clearly erroneous standard did not govern appellate review of a finding of malice by the factfinder under a First Amendment standard. The Court stated: "Regarding certain largely factual questions in some areas of the law, the stakes--in terms of impact on future cases and future conduct--are too great to entrust them finally to the judgment of the trier of fact." Id. at ---- n. 17, 104 S.Ct. at 1960 n. 17. Cf. Miller v. Fenton, --- U.S. ----, ----, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985) (voluntariness of confession is a legal question requiring independent federal determination)
 Under either standard we would reverse; therefore we need not decide which standard applies under the Establishment Clause.
 
 
 [3]
 We do not explicitly reject the district court's findings of an adequate secular purpose and of no excessive entanglement. Yet we note that all courts must be wary of accepting after-the-fact justifications by government officials in lieu of genuinely considered and recorded reasons for actions challenged on Establishment Clause grounds. We must be vigilant to distinguish between sham and sincere purposes. See Wallace, --- U.S. at ---- - ----, 105 S.Ct. at 2489-93; id. at ----, 105 S.Ct. at 2499 (O'Connor, J., concurring); Little Axe, 766 F.2d at 1403. In this case there was no evidence of the county's purpose for originally adopting the seal; the purported motive for the later expansion of its use was county identification. Yet county officials and the district court recognized the religious significance of the cross, and lay witnesses reacted to what they perceived to be religious symbolism in the sheep. It is at least possible that the seal had a secular purpose but that specific elements of it did not
 In addition, we must caution that courts not be too easily convinced that the administrative or political entanglement demonstrated in a given case is de minimis because of the limited monetary value of the government's involvement. Here the district court acknowledged that, in spite of the county's denials, "some cost must be attributable to the display of the seal." Johnson, 528 F.Supp. at 925. Expense is not the only path to entanglement. And, even if it were, we must remember that it is no defense to say that the government's action represents a "relatively minor encroachment on the First Amendment." Abington School Dist. v. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963).
 
 
 [4]
 The district court asserted that it would be "correspondingly disingenuous to deny that Catholicism was the preeminent religion in the early days of this territory." 528 F.Supp. at 924. This discounts the existence and importance of Native American religions, an assortment of belief systems that preceded Christianity in preeminence. The Spanish colonists were not the only persons inhabiting New Mexico who needed religion to keep themselves "physically and spiritually alive." Cf. Johnson, 528 F.Supp. at 922
 
 
 *
 See appendix
 
 
 *
 See appendix
 
 
 [1]
 Jurisdiction was asserted under 28 U.S.C. Secs. 1343(3), 1343(4), 2201, and 2202. 528 F.Supp. at 920
 
 
 [2]
 Chief Justice Burger, writing for the majority in Larkin v. Grendel's Den, Inc., 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982), noted that a proper inquiry under the secular purpose prong of the Lemon test is whether "valid secular objectives can be readily accomplished by other means." Id., 459 U.S. at 123-24, 103 S.Ct. at 510. See also School District of Abington Township v. Schempp, 374 U.S. 203, 294, 83 S.Ct. 1560, 1609, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring) (government "may not employ religious means to achieve a secular goal unless secular means are wholly unavailing"); ACLU of Georgia v. Rabun County Chamber of Commerce, 698 F.2d 1098, 111 (11th Cir.1983) (same)
 Lynch v. Donnelly, however, indicated that analysis of possible alternative means to achieve the city's secular goals was not required. This statement was made in the context of the historical artistic display decision there made, which bears similarity to the instant case. The dissent in Lynch vigorously argued that the Larkin alternative means analysis was relevant in determining whether the city's seasonal display, which included the creche, furthered a secular purpose. 465 U.S. at 699 - 701, 104 S.Ct. at 1372-73 (Brennan, J., dissenting). Chief Justice Burger, writing for the majority, rejected this argument in a footnote: "[The dissent] argues that the city's [secular] objectives could have been achieved without including the creche in the display, post, at 1372. True or not, that is irrelevant. The question is whether the display of the creche violates the Establishment Clause." Id., 465 U.S. at 681 n. 7, 104 S.Ct. at 1363 n. 7.
 In light of the Chief Justice's statements in the Court's opinion in Lynch v. Donnelly, we need not inquire here whether the county's secular objectives of authenticating official documents and communications, identifying documents and personnel, and promoting appreciation of the history and culture of the county can be accomplished by a seal not containing the cross and motto. See Fausto v. Diamond, 589 F.Supp. 451, 468 (D.R.I.1984) ("[I]t is 'irrelevant' that these [secular] objectives could have been accomplished by some less intrusive or controversial means.") (citing footnote 7 of the majority opinion in Lynch v. Donnelly ).
 
 
 [3]
 The separate concurring opinion of Justice O'Connor makes reference to the secular purpose issue at 465 U.S. at 691, 104 S.Ct. at 1368, and she concludes that the district court's finding of an unlawful purpose was "clearly erroneous." However, in Part III B of her concurring opinion Justice O'Connor says that as to the findings on the effect test, whether Government activity communicates endorsement of religion is not a question of "simple historical fact"; that although evidentiary submissions may help answer the question, it is in large measure a legal question to be answered on the basis of judicial interpretation of social facts; and that the trial court's conclusion concerning the effect of the display was "in error as a matter of law." Id. at 694, 104 S.Ct. at 1369
 
 
 [4]
 Although neither party raises the abstention issue on appeal, we briefly discuss it here because Pullman abstention may be raised by the court sua sponte. Bellotti v. Baird, 428 U.S. 132, 143-44 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); see also Waldron v. McAtee, 723 F.2d 1348, 1351 (7th Cir.1983); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4243, at 471 (1978)
 The decision whether to abstain is largely committed to the discretion of the district court. See Smith v. Paulk, 705 F.2d 1279, 1282 (10th Cir.1983) (quoting Ramos v. Lamm, 639 F.2d 559, 564 n. 4 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) ). Abstention is appropriate under Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), if there are unsettled questions of state law that may dispose of the case and obviate the need for deciding the federal constitutional question. See also Vinyard v. King, 655 F.2d 1016, 1018 (10th Cir.1981); 17 C. Wright, A. Miller & E. Cooper, supra, Sec. 4242.
 The district court held that although the language of N.M. Const. art II, Sec. 11 "does not parallel that of the First Amendment to the United States Constitution, it would appear that its goal is the same: to prevent the establishment of religion by the government and to protect the free exercise of religion." I R. 138.
 The Supreme Court has stated that "abstention is not required for interpretation of parallel state constitutional provisions." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237 n. 4, 104 S.Ct. 2321, 2327 n. 4, 81 L.Ed.2d 186 (1984); see also Examining Board of Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976) ("[T]o hold that abstention is required because [a state statute] might conflict with the [state's] broad and sweeping constitutional provisions, would convert abstention from an exception into a general rule."); Harris County Commissioners Court v. Moore, 420 U.S. 77, 84-85 n. 8, 95 S.Ct. 870, 876 n. 8, 43 L.Ed.2d 32 (1975) ("In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), we declined to order abstention where the federal due process claim was not complicated by an unresolved state-law question, even though the plaintiffs might have sought relief under a similar provision of the state constitution."); 17 C. Wright, A. Miller & E. Cooper, supra, Sec. 4242, at 462-64; Field, Abstention in Constitutional Cases: The Scope of The Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1099-1100 n. 108 (1974); Developments in the Law--Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1245-47 (1977).
 We therefore cannot say that the district court abused its discretion by refusing to abstain in order to permit the New Mexico courts to determine whether the Bernalillo County Seal violates N.M. Const. art. II, Sec. 11. See Anderson v. Salt Lake City Corp., 475 F.2d 29, 31 (10th Cir.) (Challenge to monument with religious and nonreligious symbols on courthouse grounds involved a "basic First Amendment right, of which the federal court has jurisdiction, and, although a like provision of the state constitution is involved, proper resolution of the federal right is not conditioned upon resolution of any state question, law or constitution."), cert. denied, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973).
 
 
 [5]
 See Zellers v. Huff, 55 N.M. 501, 236 P.2d 949, 959-61 (1951) (holding invalid under federal and state constitution, among other things, teachers' use of sectarian books and wearing of religious garb and crucifix in public schools)
 
 
 [6]
 See State v. Vogenthaler, 89 N.M. 150, 548 P.2d 112, 113-14 (1976) (discussing statute prohibiting church desecration); see also Duffy v. Las Cruces Public Schools, 557 F.Supp. 1013 (D.N.M.1983) (New Mexico statute authorizing daily moment of silence in public schools held unconstitutional under Establishment Clause and under N.M. Const. art. II, Sec. 11), appeal dismissed, No. 83-1358 (10th Cir. June 30, 1983)