**Frank OTERO, Plaintiff-Appellant,**

v.

**STATE ELECTION BOARD OF OKLA-HOMA; Lance Ward, Secretary; Joy Maifeh, Assistant Secretary; Betty McElderry, Chairman; Mona Lambird, Vice Chairman; George Krumme, Member; County Election Board of Ottawa County, Oklahoma; Dave E. Charloe, Secretary; John L. Finley, Jr., Chairman; Floyd A. Hartman, Vice Chairman; Precinct Nine Election Board; Lois Vitch, Inspector; Claire Oliver, Judge; Kathryn Neal, Clerk; City of Miami, Oklahoma; Miami Police Department; Jay Coble, Policeman; J. A. Fitzgibbon, Policewoman; All Saints Episcopal Church; Noel J. Doherty, Pastor; District Attorney's Of-**fice of the Thirteenth District of Oklahoma; Ben Loring, District Attorney; Dewayne Corbit, Investigator; Oklahoma Justice Department; Thomas Spencer, Assistant Attorney General, Defendants-Appellees.**

**No. 92-5064.**

United States Court of Appeals, Tenth Circuit.

Sept. 18, 1992.

---

Frank Otero, pro se.

Susan B. Loving, Atty. Gen., Robert M. Anthony, Asst. Atty. Gen. of Oklahoma, Oklahoma City, Okl., George Russell, T. Logan Brown, Miami, Okl., and Ben Loring, Dist. Atty., Ottawa County, Okl., for defendants-appellees.

Before LOGAN, BARRETT and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Frank Otero, an atheist and a candidate for mayor of Miami, Oklahoma, in the 1991 elections, commenced this suit challenging the use of churches for polling places in Oklahoma in state and municipal elections. Citing provisions of the Voting Rights Act, 42 U.S.C. § § 1971–73, and the Civil Rights Act of 1871, 42 U.S.C. § § 1983, 1985(3), plaintiff asserts that this usage violates his First, Fourteenth and Fifteenth Amendment rights. After denying a motion to enjoin the use of churches as polling places in a special Miami city election held on February 11, 1992, and

after briefing on the merits, the district court dismissed the action for failure to state a cause of action. Plaintiff appeals. He also has filed a motion in this court to enjoin all voting in Oklahoma churches, and another motion to enjoin the use of state employees or money to defend this appeal. We deny the motions and affirm the district court's judgment for the reasons stated hereafter.[1]

Plaintiff's pro se forty-five page complaint makes a profusion of contentions that are difficult to follow. The district court treated the case as a standard Establishment Clause–Free Exercise Clause challenge and found no constitutional violations. In some of his briefing plaintiff asserts that the court mischaracterized his cause of action. He asserts that Okla. Stat.Ann. tit. 26, § 3-120, which mentions churches as possible polling places, violates both his political rights and his religious rights, in part because plaintiff's own beliefs will not permit him to enter a church to vote. He also argues, as best we can ascertain, that in this Bible-belt area, a great majority of the population are very religious and carry their religious notions into their politics; that in their various capacities they involve the state and local governments in crossing the line between church and state mandated by the Constitution; and that they promote a religious litmus test in political activities and elections. Plaintiff's argument seems to be that in this atmosphere establishing polling places in churches disadvantages a candidate like plaintiff, who is an atheist, by increasing the influence of the religious affiliation of the candidates beyond that which would be the case if voting were held at a nonchurch polling place. In arguing his cause and that his beliefs do not permit him to enter the church, he likens his position to Christian voters asked to vote in a house of demonic worship containing pervasive symbols of Satan.

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

■ First, we find frivolous plaintiff's argument that his atheistic beliefs do not permit him to enter a church and that, therefore, he is denied his right to vote when his precinct polling place is an Episcopal church. The law recognizes diverse religions and protects their sanctity from state interference. But the burden is upon the plaintiff to establish that his belief or practice is truly rooted in a religious belief. *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). Atheists purportedly do not believe in any god; such a nonbeliever necessarily, it would seem, would have no fear of psychic or other punishment for entering a church to vote in a secular election. Even treating atheists as having the same status as members of a religion for purposes of protection from state action, plaintiff makes no showing that a tenet of atheism is a refusal to enter a church building. *See Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir.1989) (merely alleging generic objection, without showing that a tenet of his faith required refusal to take AIDS test, is insufficient to invoke First Amendment protections), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990).

Plaintiff's position as a registered voter and a once and possible future candidate for mayor, stands on a different basis. We have held, without discussion, that citizens have standing to make constitutional challenges to state action in First Amendment cases. *Friedman v. Board of County Commissioners of Bernalillo County*, 781 F.2d 777, 787 (10th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986); *see also Lee v. Weisman*, —— U.S. ——, 112 S.Ct. 2649, 2654, 120 L.Ed.2d 467 (1992) (finding standing when challenged invocation was scheduled to be delivered at upcoming graduation of respondent's daughter).

■ Despite plaintiff's attempt to allege a conspiracy to deny political rights, as opposed to religious rights, plaintiff's claim must rest on whether the state and local governments use of churches as polling places amounts to an excessive governmental entanglement with religion. The stat-utes plaintiff cites do not support a cause of action independent of the Constitution for any of the actions of which plaintiff complains.

The Fifteenth Amendment to the Constitution is inapplicable; it only guarantees the right of citizens to vote and states that the right shall not be denied by either the United States or any state on account of "race, color, or previous condition of servitude." There is no contention here that voting rights are being denied because of race, color, or a former condition of servitude. The Fourteenth Amendment, as relevant here, simply makes applicable to the states the First Amendment prohibition against any law "respecting an establishment of religion, or prohibiting the free exercise thereof."

We agree with the district court that for the "establishment" analysis the three part test of *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), is to be applied. That test has been criticized in some aspects but never abandoned. *See Lee*, —— U.S. at ——, 112 S.Ct. at 2655; *Friedman*, 781 F.2d at 780. Part one of that test is clearly met in that the establishment of the polling place in the church has the "secular" purpose of providing a place to vote. *Lemon*, 403 U.S. at 612, 91 S.Ct. at 2111. We also agree with the district court that the "principal or primary" effect is one that "neither advances nor inhibits religion." *Id.*

■ The final test is that the statute not foster an "excessive government entanglement with religion." *Id.* at 613, 91 S.Ct. at 2111. Plaintiff is perhaps correct in his argument that voting in a church might remind voters of religion, which might make some think of the religious affiliation of a candidate on the ballot or remind them of the candidate's stands on issues on which the voter's church also has taken a stand. But the test is an "excessive" entanglement, which requires a weighing of the governmental interests and motives and the extent to which the action might promote religion. Here the defendants assert the need for a conveniently located place that can accommodate the voting

public. They say, "Church buildings are located throughout a city, including in the residential areas of which many precincts consist; they have parking lots; and they typically have a commons area, parish hall, foyer, nursery or some other such nonconsecrated portion of the church building which can be used as the polling place." Answer Brief of Appellees at 6. The appendix to plaintiff's own complaint indicates that of the twenty-nine polling places in Miami, Oklahoma, nine are in churches; but the churches include several denominations: Catholic, Baptist, Presbyterian, Episcopal, Assembly of God, and Christian. Plaintiff has not alleged nor shown that an excessive rent is being paid for these polling places or that the defendants are attempting to promote a particular religion or religion in general. We hold that plaintiff has made an insufficient showing of excessive entanglement to escape summary judgment.

Focusing on the "free exercise" First Amendment analysis, we agree with the Second Circuit decision in *Berman v. Board of Elections*, 420 F.2d 684 (2d Cir. 1969), *cert. denied*, 397 U.S. 1065, 90 S.Ct. 1502, 25 L.Ed.2d 687 (1970). Plaintiff attempts to distinguish that case as involving someone who had a religion (Orthodox Jew) and on the differences between the absentee ballot laws and the atmosphere in New York versus Oklahoma. We find these differences insignificant. Like the *Berman* court, we conclude that by voting in a church building plaintiff is not required to attest to the nature of his religious beliefs, and that the burden of free exercise of religious beliefs "is so slight that it does not begin to outweigh the interest of the state in having available to it the additional polling places which the use of the churches affords." *Id.* at 686.

AFFIRMED.