Justice Thomas,
concurring.
The Court holds that the Ten Commandments monument found on the Texas State Capitol grounds does not violate the Establishment Clause. Rather than trying to suggest meaninglessness where there is meaning, The Chief Justice rightly recognizes that the monument has “religious significance.” Ante, at 690. He properly recognizes the role of religion in this Nation’s history and the permissibility of government displays acknowledging that history. Ante, at 686-688. For those reasons, I join The Chief Justice’s opinion in full.
This case would be easy if the Court were willing to abandon the inconsistent guideposts it has adopted for addressing *693 Establishment Clause challenges,* and return to the original meaning of the Clause. I have previously suggested that the Clause’s text and history “resis[t] incorporation” against the States. See Elk Grove Unified School Dist. v. Newdow, 542 U. S. 1, 45-46 (2004) (opinion concurring in judgment); see also Zelman v. Simmons-Harris, 536 U. S. 639, 677-680, and n. 3 (2002) (concurring opinion). If the Establishment Clause does not restrain the States, then it has no application here, where only state action is at issue.
Even if the Clause is incorporated, or if the Free Exercise Clause limits the power of States to establish religions, see Cutter v. Wilkinson, 544 U. S. 709, 728, n. 3 (2005) (Thomas, J., concurring), our task would be far simpler if we returned to the original meaning of the word “establishment” than it is under the various approaches this Court now uses. The Framers understood an establishment “necessarily [to] involve actual legal coercion.” Newdow, supra, at 52 (Thomas, J., concurring in judgment); Lee v. Weisman, 505 U. S. 577, 640 (1992) (Scalia, J., dissenting) (“The coercion that was a hallmark of historical establishments of religion was coercion of religious orthodoxy and of financial support by force of law and threat of penalty”). “In other words, establishment at the founding involved, for example, mandatory observance or mandatory payment of taxes supporting ministers.” Cutter, supra, at 729 (Thomas, J., concurring). And “government practices that have nothing to do with creating or maintaining ... coercive state establishments” simply do not “implicate the possible liberty interest of being *694 free from coercive state establishments.” Newdow, supra, at 53 (Thomas, J., concurring in judgment).
There is no question that, based on the original meaning of the Establishment Clause, the Ten Commandments display at issue here is constitutional. In no sense does Texas compel petitioner Van Orden to do anything. The only injury to him is that he takes offense at seeing the monument as he passes it on his way to the Texas Supreme Court Library. He need not stop to read it or even to look at it, let alone to express support for it or adopt the Commandments as guides for his life. The mere presence of the monument along his path involves no coercion and thus does not violate the Establishment Clause.
Returning to the original meaning would do more than simplify our task. It also would avoid the pitfalls present in the Court’s current approach to such challenges. This Court’s precedent elevates the trivial to the proverbial “federal case,” by making benign signs and postings subject to challenge. Yet even as it does so, the Court’s precedent attempts to avoid declaring all religious symbols and words of longstanding tradition unconstitutional, by counterfactually declaring them of little religious significance. Even when the Court’s cases recognize that such symbols have religious meaning, they adopt an unhappy compromise that fails fully to account for either the adherent’s or the nonadherent’s beliefs, and provides no principled way to choose between them. Even worse, the incoherence of the Court’s decisions in this area renders the Establishment Clause impenetrable and incapable of consistent application. All told, this Court’s jurisprudence leaves courts, governments, and believers and nonbelievers alike confused — an observation that is hardly new. See Newdow, supra, at 45, n. 1 (Thomas, J., concurring in judgment) (collecting cases).
First, this Court’s precedent permits even the slightest public recognition of religion to constitute an establishment of religion. For example, individuals frequenting a county *695 courthouse have successfully challenged as an Establishment Clause violation a sign at the courthouse alerting the public that the building was closed for Good Friday and containing a 4-inch-high crucifix. Granzeier v. Middleton, 955 F. Supp. 741, 743, and n. 2, 746-747 (ED Ky. 1997), aff’d on other grounds, 173 F. 3d 568, 576 (CA6 1999). Similarly, a park ranger has claimed that a cross erected to honor World War I veterans on a rock in the Mojave Desert Preserve violated the Establishment Clause, and won. See Buono v. Norton, 212 F. Supp. 2d 1202, 1204-1205, 1215-1217 (CD Cal. 2002). If a cross in the middle of a desert establishes a religion, then no religious observance is safe from challenge. Still other suits have charged that city seals containing religious symbols violate the Establishment Clause. See, e. g., Robinson v. Edmond, 68 F. 3d 1226 (CA10 1995); Murray v. Austin, 947 F. 2d 147 (CA5 1991); Friedman v. Board of Cty. Comm’rs of Bernalillo Cty., 781 F. 2d 777 (CA10 1985) (en banc). In every instance, the litigants are mere “[p]assersby . . . free to ignore [such symbols or signs], or even to turn their backs, just as they are free to do when they disagree with any other form of government speech.” County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U. S. 573, 664 (1989) (KENNEDY, J., concurring in judgment in part and dissenting in part).
Second, in a seeming attempt to balance out its willingness to consider almost any acknowledgment of religion an establishment, in other cases Members of this Court have concluded that the term or symbol at issue has no religious meaning by virtue of its ubiquity or rote ceremonial invocation. See, e. g., id., at 630-631 (O’Connor, J., concurring in part and concurring in judgment); Lynch v. Donnelly, 465 U. S. 668, 716-717 (1984) (Brennan, J., dissenting). But words such as “God” have religious significance. For example, just last Term this Court had before it a challenge to the recitation of the Pledge of Allegiance, which includes the *696 phrase “one Nation under God.” The declaration that our country is “‘one Nation under God’” necessarily “entail[s] an affirmation that God exists.” Newdow, 542 U. S., at 48 (Thomas, J., concurring in judgment). This phrase is thus anathema to those who reject God’s existence and a validation of His existence to those who accept it. Telling either nonbelievers or believers that the words “under God” have no meaning contradicts what they know to be true. Moreover, repetition does not deprive religious words or symbols of their traditional meaning. Words like “God” are not vulgarities for which the shock value diminishes with each successive utterance.
Even when this Court’s precedents recognize the religious meaning of symbols or words, that recognition fails to respect fully religious belief or disbelief. This Court looks for the meaning to an observer of indeterminate religious affiliation who knows all the facts and circumstances surrounding a challenged display. See, e. g., Capitol Square Review and Advisory Bd. v. Pinette, 515 U. S. 753, 780 (1995) (O’Connor, J., concurring in part and concurring in judgment) (presuming that a reasonable observer is “aware of the history and context of the community and forum in which the religious display appears”). In looking to the view of this unusually informed observer, this Court inquires whether the sign or display “sends the ancillary message to . . . nonadherents ‘that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.’ ” Santa Fe Independent School Dist. v. Doe, 530 U. S. 290, 309-310 (2000) (quoting Lynch, supra, at 688 (O’Connor, J., concurring)).
This analysis is not fully satisfying to either nonadherents or adherents. For the nonadherent, who may well be more sensitive than the hypothetical “reasonable observer,” or who may not know all the faets, this test fails to capture completely the honest and deeply felt offense he takes from *697 the government conduct. For the adherent, this analysis takes no account of the message sent by removal of the sign or display, which may well appear to him to be an act hostile to his religious faith. The Court’s foray into religious meaning either gives insufficient weight to the views of nonadher-ents and adherents alike, or it provides no principled way to choose between those views. In sum, this Court’s effort to assess religious meaning is fraught with futility.
Finally, the very “flexibility” of this Court’s Establishment Clause precedent leaves it incapable of consistent application. See Edwards v. Aguillard, 482 U. S. 578, 640 (1987) (Scalia, J., dissenting) (criticizing the Lemon test’s “flexibility” as “the absence of any principled rationale” (internal quotation marks omitted)). The inconsistency between the decisions the Court reaches today in this case and in McCreary County v. American Civil Liberties Union of Ky., post, p. 844, only compounds the confusion.
The unintelligibility of this Court’s precedent raises the further concern that, either in appearance or in fact, adjudication of Establishment Clause challenges turns on judicial predilections. See, e. g., Harris v. Zion, 927 F. 2d 1401, 1425 (CA7 1991) (Easterbrook, J., dissenting) (“Line drawing in this area will be erratic and heavily influenced by the personal views of the judges”); post, at 700 (Breyer, J., concurring in judgment) (“I see no test-related substitute for the exercise of legal judgment”). The outcome of constitutional cases ought to rest on firmer grounds than the personal preferences of judges.
Much, if not all, of this would be avoided if the Court would return to the views of the Framers and adopt coercion as the touchstone for our Establishment Clause inquiry. Every acknowledgment of religion would not give rise to an Establishment Clause claim. Courts would not act as theological commissions, judging the meaning of religious matters. Most important, our precedent would be capable of consistent and coherent application. While the Court cor *698 rectly rejects the challenge to the Ten Commandments monument on the Texas Capitol grounds, a more fundamental rethinking of our Establishment Clause jurisprudence remains in order.

See, e. g., County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U. S. 573, 592-594 (1989) (employing endorsement test); Lemon v. Kurtzman, 403 U. S. 602, 612-613 (1971) (setting forth three-pronged test); Marsh v. Chambers, 463 U. S. 783, 790-792 (1983) (upholding legislative prayer due to its “unique history”); see also Lynch v. Donnelly, 465 U. S. 668, 679-681 (1984) (“[W]e have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area”).