AMERICAN CIVIL LIBERTIES UNION OF OHIO, INC., et al., Plaintiffs,

v.

CITY OF STOW, Defendant.

City of Stow, Plaintiff,

v.

American Civil Liberties Union of Ohio, Inc., et al., Defendants.

Nos. 5:97 CV 3271, 5:97 CV 3272.

United States District Court, N.D. Ohio, Eastern Division.

Dec. 16, 1998.

---

J. Dean Carro, Akron, OH, Joan M. Englund, American Civil Liberties Union Of Ohio Foundation, Inc., Cleveland, OH, for Plaintiffs.

Thomas W. Watkins, City of Stow, Department of Law, Stow, OH, Alan E. Johnson, Leo R. Ward, Ward & Associates, Cleveland, OH, John G. Stepanovich, American Center for Law and Justice, Chesapeake, VA, for Defendant.

Concerned Citizens for Constitutional Freedom George Fisher, Stow, OH, for Movant.

Jerome F. Weiss, Cleveland, OH, for Amicus.

## MEMORANDUM OPINION

POLSTER, District Judge.

Before this Court are cross motions for summary judgment filed on May 15, 1998 (Doc. # 's 35 & 36 in Case # 5:97cv3271, and

Doc. # 's 28 & 29 in Case # 5:97cv3272, respectively). On December 16, 1997, both The City of Stow (hereinafter "The City") and The American Civil Liberties Union of Ohio, Inc., (hereinafter "ACLU") filed suit to determine whether the City of Stow's municipal seal violates the Establishment .Clause because one of the four quadrants contains Christian symbolism. By order of January 21, 1998, the two actions were consolidated.

The seal at issue was adopted by the City of Stow back on June 23, 1966 after the Stow City Council conducted a city-wide competition for the creation of an official Stow City seal. A private citizen, Harold F. Baer, submitted the winning selection. This circular seal is divided into four equal quadrants, each bearing a different symbolic illustration of the "life in Stow."[1] The upper left quadrant has an open book, overlaid with a large cross. The lower left quadrant has a sketch of a factory. The upper right quadrant has a sketch of a home and the lower right quadrant has a scroll with a quill and ink bottle. The City of Stow seal is displayed on City government vehicles, the City flag, on official City stationary and letterhead, at City Hall, and on City tax forms.

On behalf of its clients John and Jane Does' 1, 2, and 3, the ACLU moves this Court to find that as a matter of law, the cross and open book appearing on the Stow City seal comprise a religious symbol integral to Christianity, thus constituting an endorsement of religion in violation of the Establishment Clause of the First Amendment to the United States Constitution, and Article I, Section 7 of the Ohio Constitution.

The City of Stow moves the Court for summary judgment, contending that its municipal seal does not, as a matter of law, violate either the First Amendment or the corresponding provision of the Ohio Constitution. The City maintains that, taken as a whole, the seal does not endorse any particular religion, or even religion in general. The City contends that the two symbols merely reflect "an acknowledgment that people living in any community each have ... their individual 'Ultimate Concern': a concern, the content of which varies from person to person, for what each person considers most

important from a spiritual or philosophical perspective, whether that concern be a particular religion, a particular secular philosophy, or a concern with social justice." (Stow Mot. for Summ.J. at 4–5).

The Establishment Clause of the First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion." See U.S. Const. amend. I. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law ... prohibiting the free exercise [of religion]." *Id.* The interplay between the Establishment and Free Exercise Clauses of the Constitution has vexed generations of courts and legal scholars. These two clauses can never be fully reconciled, because they reflect a fundamental tension that has existed since the Pilgrims landed in the early 17th Century. Simply put, this country was founded by profoundly religious people, who left England because they did not want anyone, particularly the government, telling them how to pray. Nearly 400 years later, federal courts across the country are struggling on a daily basis to balance the right of each American, both as an individual and as part of a community, to engage in religious expression with the companion right of each American not to feel excluded or ostracized by a community's expression of religious sentiment which conflicts with his or her own personal beliefs.

■ Today, when a court is presented with a governmental practice suggestive of a "denominational preference," precedent demands that the practice is treated as suspect and that "strict scrutiny" is applied in adjudging its constitutionality. *See Allegheny County v. American Civil Liberties Union,* 492 U.S. 573, 608–609, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), citing *Larson v. Valente,* 456 U.S. 228, 246, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982).

■ In *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court enunciated a three-part test for determining whether a government practice violates the Establishment Clause. Under the *Lemon* analysis, the Establishment

---

1. A photocopy of the City of Stow official seal follows as an appendix to this opinion.

Clause is violated if any one of the three following conditions are not met. First, the governmental action in question must have a secular purpose. Second, its principal or primary effect must be one that "neither advances nor inhibits" religion. And, third, the action must not foster an excessive government entanglement with religion. *Lemon*, 403 U.S. at 612–613, 91 S.Ct. 2105. Each prong of the *Lemon* test is independent and the challenged government action must survive all three to be permitted under the Establishment Clause. *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).

While the Supreme Court has been unwilling to endorse the *Lemon* test as the "be-all" and "end-all" in Establishment Clause cases, it has continued to apply it almost exclusively. *See Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 2008, 138 L.Ed.2d 391 (1997); *Board of Education of Kiryas Joel Village School Dist. v. Grumet*, 512 U.S. 687, 695, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 396, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993); *Lee v. Weisman*, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) ("We do not accept the invitation ... to reconsider our decision in *Lemon v. Kurtzman* "); *Lynch v. Donnelly*, 465 U.S. 668, 679–685, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). Moreover, this three-pronged test continues to be applied regularly by the Circuit Courts, and in particular, the Court of Appeals for the Sixth Circuit. *See i.e. Chaudhuri v. State of Tennessee*, 130 F.3d 232, 236 (6th Cir.1997); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1482 (6th Cir.1995), *cert. denied*, 517 U.S. 1135, 116 S.Ct. 1421, 134 L.Ed.2d 545 (1996); *Americans United for Separation of Church and State v. City of Grand Rapids*, 980 F.2d 1538, 1543 (6th Cir. 1992) (*en banc* ).

In interpreting and applying the *Lemon* test, the Court has "paid particularly close attention to whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion...." *Allegheny County v. American Civil Liberties Union*, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). "The fullest realization of true religious liberty requires that govern-

ment ... effect no favoritism among sects or between religion and nonreligion." *Id.* at 593, 109 S.Ct. 3086, (quoting Justice Goldberg in *Abington School District v. Schempp*, 374 U.S. 203, 305, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)). Whether tile key word is "endorsement," "favoritism," or "promotion," the essential principle remains the same. The Establishment Clause, "at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.' " *Allegheny County*, 492 U.S. at 594, 109 S.Ct. 3086 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 687, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984)).

In a concurring opinion written in *Lynch v. Donnelly*, 465 U.S. 668, 687–694, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), Justice O'Connor explained the "purpose" and "effect" prongs of the *Lemon* test:

> The purpose prong of the *Lemon* test asks whether government's actual purpose is to endorse or disapprove of religion. The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. An affirmative answer to either question should render the challenged practice invalid.

*Lynch v. Donnelly*, 465 U.S. at 690 104 S.Ct. 1355 (1984).

In that same concurring opinion, Justice O'Connor also proposed a new two-pronged test for Establishment Clause cases: "entanglement" and "endorsement." *Lynch*, 465 U.S. at 688, 104 S.Ct. 1355. Her endorsement test has received support from other members of the Court and it appears that a majority of the Court applied it in *Allegheny County, supra.* Under Justice O'Connor's endorsement test, the Establishment Clause is violated when an objective and informed observer would conclude that the government action in question "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the

political community." *Lynch*, 465 U.S. at 688, 104 S.Ct. 1355.

To date, the Sixth Circuit Court of Appeals has not addressed the issue of a cross on a municipal seal, but three other Circuit Courts have done so. Two of those three Circuit Courts have found that the presence of a cross on a governmental seal violates the Establishment Clause of the First Amendment. The other, the Fifth Circuit, upheld a seal with a Christian cross because of the historic derivation of the seal and its unique connection to the city.

The earliest challenge to the presence of a cross on a government seal was examined by the Tenth Circuit. In *Friedman v. Board of County Commissioners of Bernalillo*, 781 F.2d 777 (10th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986), the Tenth Circuit was presented with a challenge to the Bernalillo county, New Mexico, seal which contained the Spanish *motto* "CON ESTA VENCE-MOS" ("With This We Conquer" or "With This We Overcome") over a Latin cross, highlighted by edging and rays of light. The cross was above mountains and a plain, with eight sheep standing on the plain. The seal was prominently displayed on county vehicles, county documents and stationary, and the shoulder patches of sheriff's department officers. The district court found no Establishment Clause violation, concluding that the cross was simply an historical depiction of the importance of the Catholic Church in settling the southwest. On appeal, the Tenth Circuit reversed, holding that under the second prong of the *Lemon* test, the use of the county seal had as its primary or principal effect the advancement of religion and thus violated the Establishment Clause. It held that "the seal as used conveys a strong impression to the average observer that Christianity is being endorsed." *Friedman*, 781 F.2d at 782.

In addition to the particular message conveyed by the actual elements of the seal, the Tenth Circuit also considered its pervasiveness:

> [T]he seal ... pervades the daily lives of county residents. It is not displayed once a year for a brief period on a single parcel of government land. Rather it appears on all county paper work, on all county vehicles, even on county sheriff's uniforms.

*Friedman*, 781 F.2d at 782.

The Seventh Circuit faced a similar challenge to city seals or logos. In *Harris v. City of Zion*, 927 F.2d 1401 (7th Cir.1991), *cert. denied*, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 897, (1992), and *Kuhn v. City of Rolling Meadows*, 927 F.2d 1401 (7th Cir. 1991), *cert. denied*, 505 U.S. 1218, 112 S.Ct. 3025, 120 L.Ed.2d 897, (1992), consolidated for decision, the Seventh Circuit held that the seal of the city of Rolling Meadows, Illinois and the seal, emblem and logo of the city of Zion, Illinois both violated the Establishment Clause. The Rolling Meadows seal contained, in one of its four quadrants, a depiction of a church that was under construction with a Latin cross in front of it. The Zion seal contained a shield on which appeared a Latin cross, a dove carrying a branch, a crown and scepter, and the name "Zion." A ribbon above the shield contained the words "God Reigns." Both city seals were used extensively, on city vehicles, the city letterhead, the shoulder patches of city police officers and, in Zion, on firefighters as well, and in the City Council chambers.

Addressing first the Rolling Meadows seal, the Court observed that it "is a permanent statement that is viewed year-round." 927 F.2d at 1412. Further, the seal "acts as the City's imprimatur for official correspondence, property and business." *Id.* The Court rejected the city's argument that the presence of other, secular images on the seal "neutralized" any religious message conveyed by the seal.

> The images on the seal are not just neutral snapshots of the community; they are charged with endorsement. The City tries to hide behind the fact that a young girl essentially designed the seal with no attempt to endorse a particular faith. Yet, regardless of its origins, the Rolling Meadows seal does promote the selected images it depicts. To any observer, the Rolling Meadows seal expresses the city's approval of those four pictures of city life—its flora, its schools, its industry and commercial life, and its Christianity.

*Harris,* 927 F.2d at 1412. The Court concluded that the city seal "endorses Christianity in violation of the first amendment." *Id.* at 1413.

In analyzing the Zion seal, the Court found that it violated both the purpose and the effect tests of *Lemon.* Finding that its indisputably religious purpose when it was originally adopted in 1902 was not diminished by a more recent decision to retain the seal for historical purposes, the Court went on to conclude that the seal constituted an unconstitutional endorsement of Christianity. It also rejected Zion's argument that the seal, emblem and logo "merely commemorate the historical origins of the City." *Harris,* 927 F.2d at 1414. The Seventh Circuit stated that "the City may not honor its history by retaining the blatantly sectarian seal, emblem, and logo." *Id.* at 1415. Finally, the Court rejected the city's attempts to distinguish its seal from the one in *Friedman, supra.*[2]

In contrast, the Fifth Circuit Court of Appeals in *Murray v. City of Austin, Texas,* 947 F.2d 147 (5th Cir.1991), concluded that the presence of a cross on the City of Austin's seal did not violate the Establishment Clause. The Christian cross in the Austin seal appeared within the coat of arms of Stephen F. Austin, the "father of Texas" and the person after whom the city was named. *Id.* at 149. In concluding that the seal did not have the principal or primary effect of advancing or inhibiting religion, the Court reasoned that "the insignia has the principal or primary effect of identifying city activity and property and promoting Austin's unique role and history." *Id.* at 155. The Fifth Circuit analyzed the insignia and focused on the context in which the cross appeared, recognizing:

[T]hat the reason for the cross originally being in the coat of arms; that Austin did not have an improper purpose in adopting the insignia; its long and unchallenged use; its non-proselytizing effect; that in its context, it does not endorse religion in any true or meaningful sense of the word "endorsement"; and that requiring the City to remove all displays of the insignia, arguably evinces not neutrality, but instead hostility, to religion.

*Austin,* 947 F.2d at 158.

■ The guiding principle running through the cases appears to be that, if done carefully, a governmental body may use a religious, but not a sectarian, concept or symbol on a daily basis. This is a country that celebrates religion. Indeed, Thanksgiving was created, and is still celebrated today, as a national religious holiday.[3] On this day, Americans pause to reflect upon the common human destiny that binds us together. We are not giving thanks to ourselves, but to some higher authority which has provided the bounty of the earth and given us the capacity to enhance it. Our money says "In God We Trust." While an atheist might take offense at this motto on our money, or the recognition of Thanksgiving as a national holiday, general references to a higher, spiritual authority must be permissible in order to give full effect to the Free Exercise Clause.[4] On the other hand, clearly sectarian symbols, which unmistakably refer to one faith's religious beliefs and practices, generally violate the Establishment Clause when used by a governmental entity on a *daily* basis.

## I.

■ A municipality has a legitimate interest and a legitimate purpose in creating an

2. The City of Zion contended that the cross on its seal was smaller than the cross on the Bernalillo County seal, and that it shared space on the seal with a crown, a scepter and a dove. 927 F.2d at 1415.

3. In his 1864 proclamation establishing Thanksgiving as a national holiday, Abraham Lincoln set apart the last Thursday in November "as a day of Thanksgiving and praise to Almighty God, the beneficent Creator and Ruler of the Universe."

4. The City of Stow cites *Chaudhuri v. State of Tennessee,* 130 F.3d 232 (6th Cir.1997) in support of its position. In *Chaudhuri,* the Sixth Circuit upheld the offering of nonsectarian prayers or moments of silence at functions for a state university. However, this Court finds that the reasoning and holding of *Chaudhuri* supports the opposite conclusion. A nonsectarian prayer or moment of silence passes constitutional muster *because* it is nonsectarian.

official seal to represent its people and its government. There is no evidence in the record that the purpose of the seal was, or is, to advance only the Christian religion. The Court finds that the four quadrants of the seal were intended to represent the important facets of the Stow community, religion being one of them. Thus the Court finds that the first prong of *Lemon* has been met. The City of Stow clearly has a secular purpose in creating and promulgating an official seal.

The real challenge faced by the City of Stow is overcoming the second prong of the *Lemon* test: Whether the inclusion of the Christian cross [5] on the official Stow City seal has the principal or primary *effect* of advancing or inhibiting religion. The second prong of the *Lemon* test requires application of the standard set forth in *Allegheny County v. American Civil Liberties Union*, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), i.e. "whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion . . . ." Or, as stated by Justice O'Connor in *Lynch v. Donnelly*, "whether irrespective of [the] government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Lynch*, 465 U.S. at 690, 104 S.Ct. 1355.

The constitutionality of the seal's *effect* must be judged according to the standard of a "reasonable observer." *Allegheny County*, 492 U.S. at 620, 109 S.Ct. 3086. When measured against this standard, the seal cannot withstand Establishment Clause challenge. This Court finds that there can be but one conclusion: the Stow City seal, as it is currently depicted, does indeed have the effect of advancing and promoting the Christian religion. A "reasonable observer," when looking at the Stow seal on official documents, vehicles, etc., would conclude that there is some official connection between the city and Christianity. This is precisely what

the Constitution of the United States prohibits.

The City of Stow vigorously defends its seal, setting forth examples of numerous accepted governmental practices with unequivocal religious significance, which nevertheless have passed muster under the Establishment Clause (City of Stow Mot. for Summ.J. at 6). Governmental practices such as "the presidential proclamation of Thanksgiving as a day of national celebration," "the national motto 'In God We Trust,'" "legislative prayers," and "the expenditure of large sums of money for textbooks supplied throughout the country to students to church-sponsored schools," among others, are cited by the City of Stow. The key distinction here, and the reason that these practices are not in violation of the Establishment Clause, is that they do not have the effect of "endorsing" or "advancing" any *one particular religion.*[6] But the City of Stow's seal does. With its inclusion of the cross, the Stow seal "advances" or "endorses" only one religion— Christianity. While the purpose was not to endorse Christianity, the effect of the seal is to do so. The inclusion of the cross in the seal necessarily excludes other religious beliefs or nonbeliefs and depicts Christianity as the religion recognized and endorsed by the people of Stow. The fact that the seal bears "emphatically nonreligious symbols" in the remaining three quadrants does not alter this conclusion. Stow's seal is comparable to the Rolling Meadows seal struck down by the Court of Appeals for the Seventh Circuit.

In its pleadings, the City contends the cross on the seal is not necessarily a Christian cross because it is stylized and does not have nails. This Court notes that the religious significance of the cross is undisputed and any determination to the contrary would be disingenuous. *See Friedman v. Board of County Commissioners of Bernalillo*, 781 F.2d 777, 782 (10th Cir.1985) (en banc). The

---

5. The challenged quadrant has a Christian cross and an open book, which is presumably, but not necessarily, a bible. Since the book has no religious symbol on its cover, standing alone it would not be a sectarian symbol.

6. In *Chaudhuri v. State of Tennessee*, 130 F.3d at 238, concluding that a moment of silence entailed no significant advancement of religion, the Sixth Circuit held: "No reasonable observer could conclude that TSU [the defendant University], merely by requesting a moment of silence at its functions, places its stamp of approval on *any particular religion* or religion in general."

cross is "the principal symbol of Christianity around the world ..." *Capitol Square Review and Advisory Board v. Pinette*, 515 U.S. 753, 792, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). The "effect" of the seal must be measured under the "reasonable observer" standard. *Allegheny County v. American Civil Liberties Union, supra.* To a reasonable observer, the cross on the seal is a Christian symbol.

The sad part of this case is that two years ago, probably less than 10% of the residents of Stow even knew that the city had a seal, and most likely only a fraction of those could describe what was on the seal. Now, almost everyone knows that one quadrant of the seal has a Christian cross. The issue has become very divisive to the community. While there is no evidence that the community leaders who adopted the seal more than 30 years ago had the intent in any way to "establish" the Christian religion in Stow, or that the present Stow government is trying to turn Stow into a Christian city, the heavy local publicity that has surrounded this litigation and the tension it has created in the community could only have exacerbated the effect of causing non-Christians in Stow to feel like outsiders.

■ If there is to be a use of a religious symbol in a regular, daily context (as opposed to a onetime seasonal display), the governmental entity must take great care that the symbol draws people together, and does not create a wedge among them. The symbol must therefore be nondenominational, in the sense that it may not be one clearly linked to a particular faith.

The cross is a prominent feature of the Stow seal. The religious significance and meaning of the Latin or Christian cross are unmistakable. Accordingly, the depiction of a Christian cross in one quadrant of the Stow seal violates the First Amendment, whereas a non-sectarian religious symbol, such as a hands clasped in prayer, or even a reference to God, might not. Because this Court finds no meaningful distinction between the Stow seal and that of Bernalillo County or the cities of Zion and Rolling Meadows, this Court holds that Stow's seal violates the Establishment Clause. Further, Stow's use of the seal is as pervasive as the county seal in *Friedman*, and the city seals in *Harris* and *Kuhn*.

The Austin, Texas seal is readily distinguishable from the Stow seal, not in appearance but in derivation, and this derivation has constitutional implications. Presumably, a reasonable observer in Austin Texas would know that the city seal is derived from the coat of arms of Stephen Austin, the founder of the city. The coat of arms had a cross on it. In rejecting a challenge to the Austin seal, the Court of Appeals for the Fifth Circuit focused upon the historic derivation of the seal, and the general knowledge of that derivation within the City of Austin. *Austin*, 947 F.2d at 155. Given this context, it is much less likely that a non-Christian resident of Austin would have any "second-class citizen" sense than would a non-Christian resident of Stow.

## II.

In its Reply brief, the City of Stow has relied upon a recent decision from the Southern District of Ohio which upheld the constitutionality of the State of Ohio's official motto. In *ACLU of Ohio v. Capitol Square*, 20 F.Supp.2d 1176, 1998 U.S.Dist. LEXIS 14125 (S.D.Ohio 1998), the issue presented was whether the official motto of the state of Ohio, "With God All Things Are Possible," was an endorsement of religion forbidden by the Establishment Clause of the First Amendment. Holding that it was not, the district court reasoned that the Ohio motto was an exception to the rule of *Lemon v. Kurtzman*, and declared that "even if *Lemon* were applicable here, the result would not change." Rather, the court analyzed the motto under the standard enunciated by Justice O'Connor in *Lynch v. Donnelly, supra*, "whether an objective and informed observer would conclude that the government action in question 'sends a message to nonadherents that they are outsiders, not full members of the political community, ...'" *ACLU of Ohio v. Capitol Square*, 20 F.Supp.2d at 1182, 1998 U.S.Dist. LEXIS 14125 at *20. The court went on to state:

governmental "acknowledgments" of religion, such as legislative prayers, government declaration of Thanksgiving as a public holiday, printing "In God We Trust" on coins, and opening court sessions with "God save the United States

and this honorable court" serve in the only ways reasonably possible in our culture, the legitimate secular purposes of solemnizing public occasions, expressing confidence in the future, and encouraging the recognition of what is worthy of appreciation in society. For that reason, and because of their history and ubiquity, those practices are not understood as conveying government approval of particular religious beliefs. If the various actions of the federal government reviewed above do not offend the Establishment Clause, there can be little doubt that Ohio's motto "With God All Things Are Possible" does not. *Capital Square*, 20 F.Supp.2d 1176 at 1183, 1998 U.S.Dist. LEXIS 14125 at *21.

The court further reviewed the historical, entwined relationship between religion and government, reaching all the way back to the Founding Fathers of the Constitution and found persuasive the analysis of Justice Goldberg who warned that "untutored devotion to the concept of neutrality" can lead to "a brooding and pervasive devotion to the secular and a passive, or even active, hostility to the religious," a result "not only *not* compelled by the Constitution, but ... prohibited by it." At 1185, 1998 U.S.Dist. LEXIS 14125 at *29–30, quoting *School Dist. of Abington Township*, 374 U.S. at 306, n. 19, 83 S.Ct. 1560.

In upholding the state of Ohio's right to acknowledge religion, the district court thus followed the line of cases drawing a distinction between an acknowledgment of religion in general, and an endorsement of one particular set of religious beliefs. It is this latter, impermissible governmental action that is demonstrated by the presence of the Christian cross on the official seal of the City of Stow. While the Ohio motto does derive from a passage in the New Testament, the Court concluded that a reasonable observer is not likely to know this Christian derivation and would find it indistinguishable from "In God We Trust." 20 F.Supp.2d at 1181–1183, 1998 U.S.Dist. LEXIS 14125 at *8–10.

While the City of Stow argues that this case supports the constitutionality of the cross on its seal, the reasoning in this opinion, in fact, supports the conclusion that the Stow seal is unconstitutionally sectarian. The City contends that the cross in its seal is "removed from its normal context and balanced against an open book in the same quadrant ... thus indicating an acknowledgment of religious and philosophical thinking in general, rather than an endorsement of Christianity." (City of Stow Reply at 3.) But applying the district court's reasoning in *Capitol Square* to the case at hand, a reasonable observer would look at the Stow seal and conclude that there is some official connection to Christianity.

This Court's ruling that the City of Stow cannot have a Christian cross on its official governmental seal does not take away the City's right to reflect on its seal the importance of religion to the people in Stow. To the contrary, there are numerous nonsectarian ways that the City of Stow could readily accomplish this purpose, without having the effect of making non-Christians feel like outsiders.

### III.

The Court's holding that the City of Stow's seal violates the First Amendment to the United States Constitution renders it unnecessary to resolve the ACLU's claim that the seal violates Article I, Section 7 of the Ohio Constitution.[7]

### CONCLUSION

For the foregoing reasons, the Court finds that summary judgment shall be **GRANTED** to The American Civil Liberties Union, because as a matter of law, the City of Stow's prominent display of the Christian cross on its official seal violates the Establishment Clause of the First Amendment to the United States Constitution. An objective and reasonably informed observer would conclude from the seal that adherence to Christianity is somehow relevant to a citizen's standing in the political community. The Motion for Summary Judgment of The City

---

7. The Ohio Supreme Court has not addressed this issue in the context of a municipal seal similar to that of the City of Stow.

of Stow is, accordingly, **DENIED.** The Court shall issue a judgment entry contemporaneously with the issuance of this Memorandum and Opinion.

**IT IS SO ORDERED.**